UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ELIJAH SCHIMKEWITSCH,

            Plaintiff,                           19-cv-5199 (GRB)(AYS)

      -against-


NEW YORK INSTITUTE OF TECHNOLOGY,

            Defendant.
--------------------------------------------------------------x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**


CLIFTON BUDD & DeMARIA, LLP
*Attorneys for Defendant*
The Empire State Building
350 Fifth Avenue, 61st Floor
New York, New York 10118
(212) 687-7410 (Tel)
(212) 687-3285 (Fax)


**Counsel**:
Douglas P. Catalano
Stefanie R. Toren
Stephen P. Pischl

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT .................................................................................................................2

I.    PLAINTIFF FAILED TO OPPOSE DEFENDANT'S ARGUMENTS THAT THE NASSAU HRL DOES NOT PROVIDE FOR A PRIVATE RIGHT OF ACTION ...............................2

II.    PLAINTIFF FAILED TO PLEAD THAT ANY CHALLENGED CONDUCT HAD AN IMPACT IN NEW YORK CITY AND, AS SUCH, ALL CLAIMS UNDER THE NYCHRL MUST BE DISMISSED ...................................................................................2

III.    THE COMPLAINT FAILS TO ALLEGE PLAUSIBLE CLAIMS OF DISABILITY, NATIONAL ORIGIN AND GENDER DISCRIMINATION OR RETALIATION, AND ALL SUCH CLAIMS MUST BE DISMISSED ..........................................4

A.    Plaintiff's Disability Discrimination Claims Under the ADA and the Rehab Act Must Be Dismissed..........................4

1.    Plaintiff Fails to Allege That He Is a Qualified Individual with a Disability ..............................4

2.    Plaintiff Fails to Allege That He Was Perceived as Having a Disability .......................................6

3.    Plaintiff Fails to Allege That NYIT Failed to Reasonably Accommodate Any Qualifying Disability Under the Acts.................................9

4.    Plaintiff Fails to Allege That Any Alleged Adverse Action Occurred Under Circumstances Giving Rise to an Inference of Disability Discrimination .................11

B.    Plaintiff's NYSHRL Discrimination and Retaliation Claims Must Be Dismissed For Failure to State a Claim....................14

1.    Plaintiff Fails to Allege a Plausible Claim of Disability Discrimination ......................................14

2.    Plaintiff Fails to Allege a Plausible Claim of National Origin Discrimination ......................................15

3.    Plaintiff Fails to Allege a Plausible Claim of Disparate Treatment Based on Gender ..........................16

4.    Plaintiff Fails to Allege a Plausible Claim of Disparate Impact Based on Gender................................17

5.    Plaintiff Fails to Allege a Plausible Retaliation Claim ...................................................................19

IV.    PLAINTIFF'S BREACH OF CONTRACT AND QUASI-CONTRACT CLAIMS MUST ALSO BE DISMISSED ......................................21

CONCLUSION..........................................................................................................................25

## TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                          **<u>Page</u>**

*Abel v. NYC Human Resources Admin.*,
    No. 10-cv-295 (BSJ)(FM), 2011 WL 812309 (S.D.N.Y. Mar. 3, 2011) ............................................ 14

*Amaya v. Ballyshear LLC*,
    340 F. Supp. 3d 215 (E.D.N.Y. 2018) ..................................................................................... 3

*Amie v. Shinseki*,
    806 F. Supp. 2d 641 (W.D.N.Y. 2011) ................................................................................... 6

*Annunziato v. Collecto, Inc.*,
    293 F.R.D. 329 (E.D.N.Y. 2013) ............................................................................................ 3

*Ansari v. New York Univ.*,
    No. 96-cv-5280 (MBM), 1997 WL 257473 (S.D.N.Y. May 16, 1997) ............................. 21, 23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 5, 13

*Attallah v. New York Coll. of Osteopathic Med.*,
    94 F. Supp. 3d 448 (E.D.N.Y. 2015),
    *aff'd*, 643 F. App'x 7 (2d Cir. 2016) ...................................................................................... 24

*Attard v. City of New York*,
    451 F.App'x 21 (2d Cir. 2011) ............................................................................................. 18

*Baldridge v. State*,
    740 N.Y.S.2d 723 (3d Dep't 2002) ....................................................................................... 22

*Bohnet v. Valley Stream Union Free Sch. Dist. 13*,
    30 F.Supp.3d 174 (E.D.N.Y. 2014) ....................................................................................... 11

*Bohnet v. Valley Stream Union Free Sch. Dist. 13*,
    594 F. App'x 53 (2d Cir. 2015) ....................................................................................... 11, 13

*Brady v. Wal-Mart Stores, Inc.*,
    531 F.3d 127 (2d Cir. 2008) .................................................................................................. 9

*Clark Cnty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001) ........................................................................................................... 20

*Clarke v. Tr. of Columbia Univ. of City of N.Y.*,
    No. 95-cv-10627 (PKL), 1996 WL 609271 (S.D.N.Y. Oct. 23, 1996) ................................... 23

*Cody v. Cty. of Nassau*,
  577 F. Supp. 2d 623 (E.D.N.Y. 2008),
  *aff'd*, 345 F. App'x 717 (2d Cir. 2009) ............................................................ 8

*Dancause v. Mount Morris Cent. Sch. Dist.*,
  590 F. App'x 27 (2d Cir. 2014) .......................................................................... 5

*De La Fuente v. Sherry Netherland, Inc.*,
  No. 1:17-cv-4759 (PAE), 2018 WL 1597649 (S.D.N.Y. Mar. 27, 2018) ......... 18

*Eustace v. S. Buffalo Mercy Hosp.*,
  36 F. App'x 673 (2d Cir. 2002) ........................................................................... 7

*Felix v. N.Y.C. Transit Authority*,
  154 F. Supp. 2d 640 (S.D.N.Y. 2001),
  *aff'd*, 324 F.3d 102 (2d Cir. 2003) .................................................................... 9

*Forde v. Empire State Coll.*,
  No. 10-cv-9446 (CM)(THK), 2011 WL 4376499 (S.D.N.Y. Sept. 19, 2011) ... 16

*Gally v. Columbia Univ.*,
  22 F.Supp.2d 199 (S.D.N.Y. 1998) ................................................................... 24

*Gordon v. City of New York*,
  No. 14-cv-6115 (JPO), 2015 WL 3473500 (S.D.N.Y. June 2, 2015) ............... 18

*Graham v. Boehringer Ingelheim Pharm., Inc.*,
  451 F. Supp. 2d 360 (D. Conn. 2006) ................................................................ 7

*Graham v. Long Island R.R.*,
  230 F.3d 34 (2d Cir. 2000) ............................................................................... 17

*Graves v. Finch Pruyn & Co., Inc.*,
  457 F.3d 181 (2d Cir. 2006) ............................................................................... 9

*Hoffman v. Parade Publs.*,
  15 N.Y.3d 285 (N.Y. 2010) ............................................................................ 2, 3

*Hoffman v. Parade Publs.*,
  878 N.Y.S.2d 320 (1st Dep't 2009) .................................................................... 2

*Jackson v. Fed. Express*,
  766 F.3d 189 (2d Cir. Conn. 2014) .................................................................. 2, 7

*Jordan v. Forfeiture Support Associates*,
  928 F. Supp. 2d 588 (E.D.N.Y. 2013) .............................................................. 10

*Keles v. Trustees of Columbia Univ. in City of N.Y.*,
903 N.Y.S.2d 18 (1ˢᵗ Dep't 2010) ................................................................................. 21

*Kelly v. New York State Office of Mental Health*,
200 F. Supp. 3d 378 (E.D.N.Y. 2016) ............................................................................ 8

*Kinneary v. City of New York*,
601 F.3d 151 (2d Cir. 2010) .......................................................................................... 14

*Kohutka v. Town of Hempstead*,
994 F.Supp. 2d 305 (E.D.N.Y. 2014) .............................................................................. 2

*Krikelis v. Vassar Coll.*,
581 F. Supp. 2d 476 (S.D.N.Y. 2008) ............................................................................ 14

*Kwan v. Andalex Grp., LLC*,
737 F.3d 834 (2d Cir. 2013) .......................................................................................... 11

*Leibovitz v. N.Y. City Transit Auth.*,
252 F.3d 179 (2d Cir. 2001) .......................................................................................... 15

*Lipton v. Cty. of Orange, N.Y.*,
315 F. Supp. 2d 434 (S.D.N.Y. 2004) .............................................................................. 2

*Littlejohn v. City of New York*,
795 F.3d 297 (2d Cir. 2015) ..................................................................................... 12, 15

*MacEntee v. IBM*,
783 F. Supp. 2d 434 (S.D.N.Y. 2011),
*aff'd*, 471 Fed.Appx. 49 (2d Cir. 2012) ........................................................................ 10

*Maisonet v. Metropolitan Hospital & Health Hospital Corp.*,
640 F. Supp. 2d 345 (S.D.N.Y. 2009) ............................................................................ 11

*Majeed v. ADF Companies*,
No. 2:11-cv-5459 (SJF)(ETB), 2013 WL 654416 (E.D.N.Y. Feb. 20, 2013) .................... 19

*Marshall v. Starbucks Corp.*,
No. 1:11-cv-02521 (AJN), 2012 WL 13049168 (S.D.N.Y. Sept. 17, 2012) ...................... 20

*Miller v. City of New York*,
No. 15-cv-7563, 2018 WL 2059841 (S.D.N.Y. May 1, 2018),
*aff'd sub nom.*, *Bloise v. City of New York*, 768 F. App'x 103 (2d Cir. 2019).................... 18

*Mitchell v. New York City Transit Auth.*,
856 F. Supp. 2d 478 (E.D.N.Y. 2012) .......................................................................... 6, 8

*Murray v. Visiting Nurse Servs. of N.Y.*,
    528 F. Supp. 2d 257 (S.D.N.Y. 2007) ................................................................. 20

*Natofsky v. City of New York*,
    921 F.3d 337 (2d Cir. 2019) ................................................................................. 11

*Novio v. New York Acad. of Art*,
    317 F. Supp. 3d 803 (S.D.N.Y. 2018) ................................................................. 23

*Nungesser v. Columbia Univ.*,
    169 F. Supp. 3d 353 (S.D.N.Y. 2016) ................................................................. 22

*O'Donnell v. King B 100, LLC*,
    No. 1:14-cv-1345 (TJM), 2016 WL 7742779 (N.D.N.Y. May 3, 2016) ............... 4

*Okoh v. Sullivan*,
    No. 10-cv-2457, 2011 WL 672420 (S.D.N.Y. Feb. 24, 2011),
    *aff'd*, 441 F.App'x 813 (2d Cir. 2011) ............................................................... 24

*Papaspiridakos v. Educ. Affiliates, Inc.*,
    580 Fed. Appx. 17 (2d Cir. 2014) ....................................................................... 22

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007) ................................................................................. 15

*Reyes v. Cty. of Suffolk*,
    995 F. Supp. 2d 215 (E.D.N.Y. 2014) ................................................................. 24

*Rodal v. Anesthesia Grp. of Onondaga, P.C.*,
    369 F.3d 113 (2d Cir. 2004) ................................................................................. 14

*Rohn Padmore, Inc. v. LC Play Inc.*,
    679 F. Supp. 2d 454 (S.D.N.Y. 2010) ................................................................... 2

*Scaggs v. New York Dept. of Educ.*,
    No. 06-cv-0799 (JFB)(VVP), 2007 WL 1456221 (E.D.N.Y. May 16, 2007) ...... 15

*Shumway v. United Parcel Serv., Inc.*,
    118 F.3d 60 (2d Cir. 1997) ................................................................................... 17

*Soloviev v. Goldstein*,
    104 F.Supp.3d 232 (E.D.N.Y. 2015) ................................................................... 15

*Soto v. Marist Coll.*,
    No. 17-cv-7976 (KMK), 2019 WL 2371713 (S.D.N.Y. June 5, 2019) ............... 15

*Taylor v. Harbour Pointe Homeowners Ass'n*,
  690 F.3d 44 (2d Cir. 2012),
  *cert. denied*, 568 U.S. 1162 (2013) ....................................................................... 10

*Thomson v. Odyssey House*,
  No. 14-cv-3857 (MKB), 2015 WL 5561209 (E.D.N.Y. Sept. 21, 2015),
  *aff'd*, 652 F. App'x 44 (2d Cir. 2016) .................................................................... 14

*Tucker v. Gonzales*, No. 03-cv-3106 (LTS)(FM),
  2005 WL 2385844 (S.D.N.Y. Sept. 27, 2005) ........................................................ 18

*Vega v. Hempstead Union Free Sch. Dist.*,
  801 F.3d 72 (2d Cir. 2015) ....................................................................................... 17

*Ward v. New York Univ.*,
  No. 99-cv-8733 (RCC), 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000) ................. 23

*Weixel v. Bd. of Educ. of City of New York*,
  287 F.3d 138 (2d Cir. 2002) ....................................................................................... 4

*Yarde v. Good Samaritan Hosp.*,
  360 F. Supp. 2d 552 (S.D.N.Y. 2005) ..................................................................... 20

## Statutes

N.Y. C.P.L.R. § 217 .................................................................................................... 25

## Rules

Fed. R. Civ. P. 8 ........................................................................................................ 18

## Regulations

29 C.F.R. § 1630.2 ..................................................................................................... 11

## PRELIMINARY STATEMENT

Defendant New York Institute of Technology ("NYIT"), respectfully submits this reply memorandum of law in further support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Complaint (the "Complaint") in its entirety with prejudice. Plaintiff, Elijah Schimkewitsch ("Plaintiff"), a former student in NYIT's Master's Degree Program in Physician Assistant Studies (the "Program"), alleges in the Complaint that NYIT: (1) discriminated against him based on his alleged disability of anxiety disorder and/or perceived disability in violation of Title III of the Americans With Disabilities Act, 29 U.S.C. § 794 *et seq*. ("Rehab Act"), the New York State Human Rights Law ("NYSHRL"), the Nassau County Human Rights Law ("Nassau HRL") and the New York City Human Rights Law ("NYCHRL"); (2) subjected him to gender discrimination based on disparate treatment and disparate impact in violation of the NYSHRL, Nassau HRL and NYCHRL; (3) discriminated against him based on his alleged Ukrainian and/or Russian national origin in violation of the NYSHRL, Nassau HRL and NYCHRL; (4) retaliated against him in violation of the NYSHRL, Nassau HRL and NYCHRL; (5) breached an implied agreement; (6) was unjustly enriched; and (7) owes Plaintiff reimbursement based on the doctrine of quantum meruit. Plaintiff's Complaint fails to plead even minimally sufficient allegations to support any of these claims. Plaintiff's opposition cannot overcome these patent deficiencies.

At the heart of each of Plaintiff's claims is his central dispute that NYIT unfairly suspended and ultimately dismissed him from the Program following a disciplinary investigation. Plaintiff's exclusive remedy to challenge any determinations made by NYIT relative to his dismissal was to timely commence a proceeding pursuant to Article 78 of the C.P.L.R. within the applicable four-month statute of limitations. He failed to do so, and he has further failed to plausibly plead any colorable claim against NYIT concerning his participation in or dismissal from the Program. For the reasons set forth herein, and in NYIT's in initial moving papers, Plaintiff's Complaint should be dismissed in its entirety.

## ARGUMENT

## I.    PLAINTIFF FAILED TO OPPOSE DEFENDANT'S ARGUMENTS THAT THE NASSAU HRL DOES NOT PROVIDE FOR A PRIVATE RIGHT OF ACTION

Where an argument concerning a claim goes unaddressed in a party's papers opposing a motion, such claim is deemed abandoned. *Lipton v. Cty. of Orange*, *N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("[c]ourts may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed"); *see also Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. Conn. 2014) ("a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others") Here, Plaintiff has entirely failed to oppose NYIT's arguments in its initial moving papers that there is no private right of action under the Nassau HRL. *See* Def's MOL, Pt. II.E, p. 20, *citing Kohutka v. Town of Hempstead*, 994 F.Supp.2d 305, 331 (E.D.N.Y. 2014). Accordingly, to the extent Plaintiff has alleged any claims of disability, gender and national origin discrimination or retaliation under the Nassau HRL, any such claims should be deemed abandoned and dismissed.

## II.   PLAINTIFF FAILED TO PLEAD THAT ANY CHALLENGED CONDUCT HAD AN IMPACT IN NEW YORK CITY AND, AS SUCH, ALL CLAIMS UNDER THE NYCHRL MUST BE DISMISSED

Plaintiff wrongly asserts that "a nonresident plaintiff may invoke the protections of the NYCHRL by merely alleging that the discriminatory [challenged] decision [...] was made in the city." (Pl. Opp., Pt. IV, p. 24, *citing Rohn Padmore, Inc. v. LC Play Inc.*, 679 F. Supp. 2d 454, 465 (S.D.N.Y. 2010)). This is a plain misstatement of New York law: the *Padmore* matter cited by Plaintiff relied extensively on the First Department's decision in *Hoffman v. Parade Publs.*, 878 N.Y.S.2d 320, 322 (1st Dep't 2009) ("*Hoffman I*"), which was reversed by the Court of Appeals on this specific point after *Padmore* was decided. *See Hoffman v. Parade Publs.*, 15 N.Y.3d 285, 289 (N.Y. 2010) ("*Hoffman II*"). Instead, New York law now expressly holds that "it is the site of impact, not the place of origination, that determines

where discriminatory acts occur," *Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215, 222 (E.D.N.Y. 2018) (*internal citations omitted*), and an employer's decision, made in a New York City office, to terminate a non-resident employee who does not work in New York City cannot plausibly allege an impact sufficient to qualify for coverage under the NYCHRL. *Hoffman II*, *supra*, at 291. Accordingly, even if, as Plaintiff claims, he could plausibly allege that "the decision to expel him from the program *took place* in New York City," by virtue of NYIT's Physician Assistant Studies Program maintaining administrative offices there,[1] this cannot provide a basis for coverage as a matter of law. *Hoffman II*, 15 N.Y.3d at 290-91.

The only other argument raised by Plaintiff in his opposition is that he "was required to complete clinical rotations which occurred in New York City." (Pl. Opp., Pt. IV, p. 25). Notwithstanding that the Complaint itself does not plead any such allegation, *no challenged conduct* is alleged to have occurred during rotations in New York City. The only rotation during which Plaintiff has alleged that any challenged activity occurred was his rotation "at Long Island Jewish Medical Center in Lake Success, New York." (Complaint, ¶42.) Plaintiff is a Nassau County resident challenging his dismissal from a Nassau County-based academic institution, contesting conduct that is exclusively alleged to have occurred in Nassau County. Accordingly, Plaintiff has failed to plead any acts that impacted him within the boundaries of New York City and a *Hoffman II* impact analysis properly applied to these facts precludes Plaintiff from invoking the protections of the NYCHRL.

---

[1]  Nor is Plaintiff's argument in his Opposition supported on the pleadings: as Plaintiff is forced to concede, the Complaint does not to include any allegation regarding the location of any NYIT administrative offices. (*See* Pl. Opp, Pt. IV, p. 25, fn. 4). Even assuming Plaintiff were permitted to amend the Complaint to detail the location of these offices, any such amendment must be denied as futile: the *existence* of NYC offices notwithstanding, the Complaint provides no factual basis for concluding that any determination *was in fact made* in any such offices. Again, even if true, such allegation would still be insufficient as a matter of law to state a claim under *Hoffman II*. *See Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) ("[a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)").

III.   **THE COMPLAINT FAILS TO ALLEGE PLAUSIBLE CLAIMS OF DISABILITY, NATIONAL ORIGIN AND GENDER DISCRIMINATION OR RETALIATION, AND ALL SUCH CLAIMS MUST BE DISMISSED**

A.   **Plaintiff's Disability Discrimination Claims Under the ADA and the Rehab Act Must Be Dismissed**

1.   ***Plaintiff Fails to Allege That He Is a Qualified Individual with a Disability***

The Complaint does not allege that Plaintiff is "disabled" sufficient to state a claim under the ADA or the Rehab Act (the "Acts"). Under the law of the Second Circuit, to sufficiently plead that he is a qualified individual with a disability under the Acts, a plaintiff "must identify the activity claimed to be impaired, and establish that [such activity] constitutes a 'major life activity.'" *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002). While Plaintiff alleges that he was "diagnosed with anxiety disorder" (Complaint, ¶7), beyond that, Plaintiff fails to identify any activities that his anxiety disorder impaired, or any facts from which this Court could conceivably make this inference. As a matter of law, "[t]he mere presence of a medical condition does not establish that a plaintiff is disabled," and without some allegation beyond this mere diagnosis, Plaintiff fails to allege that he is a qualified individual under the Acts. *O'Donnell v. King B 100, LLC*, No. 1:14-cv-1345 (TJM), 2016 WL 7742779, *9 (N.D.N.Y. May 3, 2016) (*citations omitted*).

Affording Plaintiff every leniency, the only allegation that conceivably identifies life activities arguably impacted by Plaintiff's anxiety is the formulaic recitation that "Plaintiff has a mental impairment that substantially limits one or more major life activities." (Complaint, ¶68). Aside from this wholly conclusory allegation, Plaintiff does not identify or describe any life activities that his anxiety condition might conceivably impair. Such pleading is patently insufficient to survive a motion to dismiss. Even where a complaint has done far more than Plaintiff has here, and "provide[d] a non-exhaustive list of major life activities, including 'eating, sleeping, [...] concentrating, thinking, communicating, and working'" that a plaintiff could not adequately perform, where a complaint "did not allege any *facts* from

which a court could plausibly infer that [the alleged impairment] substantially limited these major life activities," it must be dismissed under FED. R. CIV. P. 12(b)(6). *Dancause v. Mount Morris Cent. Sch. Dist.*, 590 F. App'x 27, 29 (2d Cir. 2014) (*emphasis original*), *citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The instant Complaint is deficient in precisely the same way and compels the same result.

In his opposition, Plaintiff refers to allegations that he was disciplined after taking a 4-hour sleeping break during a clinical rotation shift on July 9, 2018. He attempts to claim that "[t]he pressures of working 27 hours straight, coupled with his anxiety disorder substantially impacted his work." (*See* Pl. Opp., Pt. I.A, p. 4, *citing* Complaint, ¶¶43-46). However, the referenced allegations do not mention Plaintiff's anxiety, or suggest his anxiety had anything to do with his decision to take a sleeping break. (*Cf.* Complaint, ¶¶42-44). Instead, the Complaint attributes the need for this break to an "assignment to work a 27-hour shift […] after three consecutive days of working 12-hour shifts." (*Id.*, ¶43). As pleaded, it cannot be reasonably inferred from the Complaint that Plaintiff's need to take a break— even if it could be related to his anxiety—had any impact on his ability to perform his work during the rotation or his performance in school. Per the Complaint, NYIT's objection with Plaintiff's July 9th rotation performance was not his taking a break, but the allegation "that [Plaintiff] engaged in conduct that risked patient harm." (Complaint, ¶46).

The Complaint ultimately undercuts any inference that Plaintiff's anxiety disorder impaired or limited his ability to perform any major life activities, including studying or working. The only reference to any medical evaluation concerning Plaintiff's anxiety disorder concedes that "[t]he psychiatrist who evaluated [Plaintiff] communicated repeatedly to the NYIT administration that [Plaintiff] suffered from anxiety disorder but was fit to resume academic studies." (Complaint, ¶53). The only plausible inference that could be drawn from this allegation rebuts the showing Plaintiff must make to state a claim: Plaintiff's anxiety disorder, at least at the time of diagnosis, *did not* impact the life

activities of studying or working. As pleaded, there is no basis for this Court to infer that Plaintiff is a qualified individual with a disability within the meaning of the Acts. Accordingly, all claims under the Acts should be dismissed.

### 2. *Plaintiff Fails to Allege That He Was Perceived as Having a Disability*

Plaintiff contends that NYIT perceived him as having a disability and discriminated against him based on this erroneous belief. This claim is entirely predicated on a faulty premise that NYIT's imputed awareness of Plaintiff's diagnosis with anxiety disorder, in and of itself, is sufficient to demonstrate that NYIT regarded Plaintiff as being disabled as defined under the Acts. *See* Pl. Opp., Pt. I.B, pp. 5-7. This is not the law.

Instead, "[i]t is well settled that 'the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that *the employer regarded the employee as disabled **or** that perception caused the adverse employment action.*'" *Mitchell v. New York City Transit Auth.*, 856 F. Supp. 2d 478, 484 (E.D.N.Y. 2012) (*emphasis added*); *accord Amie v. Shinseki*, 806 F. Supp. 2d 641, 644 (W.D.N.Y. 2011). Plaintiff must plead allegations from which both of these elements could be reasonably inferred to survive dismissal. *See* 29 C.F.R. § 1630.2(g)(1)(iii) (defining "regarded as" as meaning an individual "has been subjected to an action prohibited by the ADA as amended *because of* an actual or perceived impairment that is not both 'transitory and minor.'") (*emphasis added*). He fails to do on these pleadings. Again, the only allegations from which it could be inferred that NYIT perceived Plaintiff to have an impairment are: (1) Dr. Jackson's alleged comment that Plaintiff "should get psychiatric counseling or executive coaching" (Complaint, ¶36); and (2) the diagnosis from the psychiatrist who evaluated Plaintiff as part of a disciplinary proceeding (*see* Complaint, ¶¶40-53).

Dr. Jackson's comment—one isolated remark suggesting that Plaintiff might consider seeking counseling or executive coaching—cannot adequately allege that NYIT perceived Plaintiff as being disabled. As NYIT has extensively documented in these briefings, Courts have repeatedly

held that allegations that an employer suggested, or even required, a mental or physical examination are insufficient to plausibly infer that an individual was regarded as disabled. (*See* Def. MOL, Pt. II.A.2, p. 9 (*collecting cases*)); *see also Eustace v. S. Buffalo Mercy Hosp.*, 36 F. App'x 673, 675 (2d Cir. 2002) ("evidence that an employer required the assessment of an employee's health and fitness indicates simply that the employee's condition was "an open question" […] [and] without more, does not establish that the employee was perceived as substantially impaired in one or more major life activities"); *Graham v. Boehringer Ingelheim Pharm., Inc.*, 451 F. Supp. 2d 360, 372 (D. Conn. 2006) ("requiring mental and physical examinations to determine fitness for duty are not enough to suggest that an employee is regarded as mentally disabled"). Plaintiff failed to respond to this argument or any of the cited authority, effectively abandoning any claim that he was "perceived as" having a disability. *Jackson*, *supra*, 766 F.3d at 196.

As applied specifically to Dr. Jackson's statement, the Complaint alleges that this remark was made at the conclusion of an Academic Standing Committee ("ASC") meeting, in response to Dr. Jackson having observed Plaintiff's conduct in that meeting. (*See* Complaint, ¶36). In this context, the remark could speak only to Dr. Jackson's perception that, *at that specific time*, Plaintiff might benefit from counseling or coaching. Not only does the statement have no probative value as to whether Dr. Jackson believed Plaintiff was impaired in any way—at most, it might suggest that Dr. Jackson regarded Plaintiff's mental condition as an open question that required assessment by a professional—it cannot plausibly infer any belief on his part that Plaintiff had an impairment that might last over six months, as impairment is defined in the Acts. *Cf. Graham*, *supra*, 451 F. Supp. 2d at 372 ("the requirement that employees submit to physical exams to determine their fitness for duty suggested no more than that their physical condition was an open question."); *Kelly*

*v. New York State Office of Mental Health*, 200 F. Supp. 3d 378, 395 (E.D.N.Y. 2016) (a declarant's statement to plaintiff that she 'should take some time off' could not plausibly allege that the declarant believed plaintiff to be suffering from an impairment that would last or could be expected to last over six months).

Similarly, Plaintiff's allegations concerning his diagnosis with anxiety disorder are also insufficient to plausibly infer a "perceived as" disability claim. (*See* Complaint, ¶¶50-55). Again, Plaintiff attempts to impermissibly infer from NYIT's mere awareness of his diagnosis, both that NYIT regarded Plaintiff as having an impairment *and* that such impairment would be more than transitory. *See* Pl. Opp., Pt. I.B, pp. 5-7. As clearly settled in this Circuit, allegations of an employer's mere knowledge of a medical condition, without more, does not meet the "perceived as" definition under the Acts. *See Cody v. Cty. of Nassau*, 577 F. Supp. 2d 623, 643 (E.D.N.Y. 2008), *aff'd*, 345 F. App'x 717 (2d Cir. 2009); *see also Mitchell, supra*, 856 F. Supp. 2d at 484 ("while it is clear that [plaintiff's] numerous absences and sick forms made [defendant] aware of [plaintiff's] physical impairment, there is no evidence that this in turn led [defendant] to regard [plaintiff] as disabled").

Finally, Plaintiff's arguments concerning the psychiatrist's diagnosis undercut any inference that his anxiety disorder constituted an impairment at all. As conceded in the Complaint, the psychiatrist both diagnosed Plaintiff *and* simultaneously certified that Plaintiff's anxiety disorder did not impair or limit his ability to perform his academic studies. (Complaint, ¶53). Accordingly, Plaintiff cannot plausibly state a claim that he was perceived as having a qualifying disability, and any claim on those grounds must be dismissed.

**3.**      *Plaintiff Fails to Allege That NYIT Failed to Reasonably Accommodate Any Qualifying Disability Under the Acts*

To the extent that Plaintiff attempts to construe his Complaint as setting forth a discrete claim for failure to accommodate, any such claim must fail. To state a plausible claim at the pleadings stage, a plaintiff must allege, at minimum, that: (1) he is a qualifying person with a disability under the meaning of the Acts; (2) *his employer had notice of his disability*; (3) he could perform the essential elements of his job with a reasonable accommodation; and (4) *his employer refused to make the necessary accommodation*. *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006) (*emphasis added*). Plaintiff fails to do so.

Notably, the rule in this Circuit is that "the disabled individual is responsible for informing his employer that an accommodation is needed" under the Acts, *Graves*, *supra*, 457 F.3d at 184, which Plaintiff is never alleged to have done. However, in cases where (1) the disability was known or obvious, and (2) the employer thus knew or reasonably should have known of the need for an accommodation, an employee need not issue an express request for accommodation. *See, e.g.*, *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008); *Felix v. N.Y.C. Transit Authority*, 154 F. Supp. 2d 640, 657 (S.D.N.Y. 2001), *aff'd*, 324 F.3d 102 (2d Cir. 2003).

Here, Plaintiff's entire argument concerning accommodation is predicated on a single, conclusory allegation that "[a]t no point did NYIT engage in an interactive dialogue, or inquire with [Plaintiff] or its psychiatrist what, if any, accommodation it could provide [Plaintiff] [with] [sic] to allow him to complete his education." (Complaint, ¶62). However, even taking this allegation as true, it cannot be reasonably inferred from the Complaint that Defendant knew or should have known of any need for an accommodation. The Complaint does not allege that Plaintiff ever requested an accommodation of any kind, or that NYIT ever refused Plaintiff any reasonable accommodation. *See Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 49

(2d Cir. 2012), *cert. denied*, 568 U.S. 1162 (2013) ("To make a *prima facie* showing in support of her failure to accommodate claim, [plaintiff] was required to give the [defendants] an opportunity to accommodate her. The defendants must have had an idea of what accommodation [plaintiff] sought prior to their incurring liability for failing affirmatively to grant a reasonable accommodation."). Even in his opposition, Plaintiff fails to suggest any possible accommodation that might have permitted him to complete his studies at NYIT. (*See* Pl. Opp., Pt. I.C, pp. 7-9). Indeed, the Complaint concedes that NYIT's determination to dismiss Plaintiff from the Program was due to allegations (which Plaintiff disputes), that he "engaged in conduct that risked patient harm." (Complaint, ¶46). This disciplinary issue was entirely unrelated to Plaintiff's academic performance or his diagnosed condition.

Moreover, to the extent that Plaintiff alleges that NYIT's affiliate psychiatrist advised NYIT of Plaintiff's diagnosis, the pleadings give no indication that knowledge of this diagnosis alone put NYIT on notice that Plaintiff's disciplinary issues stemmed from a disability, if in fact they did. Again, the Complaint concedes that the psychiatrist diagnosed Plaintiff's anxiety disorder while simultaneously advising that this condition did not impair or limit Plaintiff's ability to perform his academic studies. (Complaint, ¶53). In sum, Plaintiff simply fails to allege any facts from which this Court could plausibly infer that he requested an accommodation, that NYIT had reason to know of an impairment that required an accommodation, or that NYIT ever refused to provide a reasonable accommodation. As a result, this cause of action must be dismissed. *See Jordan v. Forfeiture Support Associates*, 928 F. Supp. 2d 588, 609 (E.D.N.Y. 2013) (dismissing accommodation claim where plaintiff failed to allege that "she needed, requested, or was refused an accommodation") (*citation omitted*); *MacEntee v. IBM,* 783 F. Supp. 2d 434, 444 (S.D.N.Y. 2011), *aff'd*, 471 Fed.Appx. 49 (2d Cir. 2012) (dismissing accommodation claim where allegations

showed defendant was "not given the opportunity to offer, or refuse" an accommodation and "had no actual or constructive knowledge of the need for any accommodations"); *Maisonet v. Metropolitan Hospital & Health Hospital Corp.*, 640 F. Supp. 2d 345, 350 (S.D.N.Y. 2009) (dismissing accommodation claim because complaint contained "no factual allegations relating to a failure on the part of [defendants] to provide reasonable accommodation for [plaintiff's] alleged disability").

4. ***Plaintiff Fails to Allege That Any Alleged Adverse Action Occurred Under Circumstances Giving Rise to an Inference of Disability Discrimination***

Claims under the Acts require a plaintiff to prove that discrimination was the but-for cause of any adverse action, *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019), and not simply a 'substantial' or 'motivating' factor in the [defendant's] decision." *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 845 (2d Cir. 2013). While the Second Circuit in both the *Natofsky* and *Kwan* matters was reviewing motions for summary judgment, as the Court clarified in *Bohnet v. Valley Stream Union Free Sch. Dist. 13*, for any discrimination claims with a but-for causation element, to survive a motion to dismiss, a Plaintiff must plead "sufficient facts to make plausible the conclusion" that that discrimination was a "but-for" cause of the employer's adverse action, that is, that the adverse action would not have occurred in the absence of the discriminatory motive. 594 F. App'x 53, 54 (2d Cir. 2015), *citing Bohnet v. Valley Stream Union Free Sch. Dist. 13,* 30 F.Supp.3d 174 (E.D.N.Y. 2014). *Bohnet* plainly sets out the appropriate pleading standard in this Circuit, and Plaintiff's arguments to the contrary in his opposition are meritless. (*See generally*, Pl. Opp., Pt. II.D, pp. 9-14). No allegations pleaded in the Complaint could conceivably permit this Court to infer that Plaintiff would not have been dismissed from the Program in the absence of a disability-based discriminatory motive. (*See* Complaint, ¶¶67-72). Simply put, Plaintiff alleges that NYIT's determination to dismiss him from the Program was due to allegations that he

"engaged in conduct that risked patient harm" (Complaint, ¶46), not related to any performance shortcomings.

In his opposition, Plaintiff points to two allegations that he contends might permit an inference of a disability-based discriminatory motive relating to his dismissal. First, he argues that Dr. Jackson's alleged comment that Plaintiff "should get psychiatric counseling or executing coaching" (Complaint, ¶36) constitutes "criticism of [Plaintiff] in degrading terms relating to his protected characteristic." (Pl. Opp., Pt. II.D, pp. 9-14, *citing Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015). Again, and as discussed above, *supra* at Pt. III.A.2, Dr. Jackson's alleged comment does not even imply that he or any other NYIT personnel regarded Plaintiff as having a "disability" as a matter of law, let alone that this comment might plausibly constitute a disparaging reference to any perceived disability. From a plain reading of the Complaint, there is no basis to infer that the comment itself was "degrading." Even taken in context, it cannot be inferred that this comment was meant to be critical of Plaintiff; to be disrespectful of, injure or discredit Plaintiff; or to paint either Plaintiff or people with a disability in a negative light. With the sole exception of this comment, there are no other allegations in the Complaint that anyone— an NYIT student, a faculty member, or anyone else—ever even referred to or remarked upon Plaintiff's anxiety diagnosis in any way, let alone in a degrading way. (*See* Complaint, *generally*). Again, and as argued at greater length in NYIT's initial motion papers, the Complaint does not permit even a minimal inference of direct discriminatory animus related to his disability.

Second, to the extent that Plaintiff also argues that disability-based discriminatory animus might be inferred from NYIT requiring Plaintiff to be evaluated by a psychiatrist (*see* Complaint, ¶¶42-55), the allegations in the Complaint permit no such inference. Plaintiff argues that, because he "was required to receive psychiatric clearance before he could return to school" following a disciplinary suspension, NYIT therefore made the determination to suspend him "because of [...] NYIT's perception that he was

psychologically disabled." (Complaint, ¶51). Moreover, and notwithstanding that, as detailed at greater length, *supra*, at Pt. III.A.1, the Complaint does not permit any plausible inference that Plaintiff was perceived as disabled, the entire premise of this argument is faulty. At the outset, this argument cannot be squared with the allegations in the Complaint: Plaintiff alleges he was suspended prior to his diagnosis and before he was evaluated. (*See* Complaint, ¶¶49-50). Moreover, the Complaint alleges that, "[n]otwithstanding the psychiatrist's unequivocal evaluation that […] [Plaintiff] was nonetheless fit [despite the anxiety disorder diagnosis] to resume academic studies," NYIT dismissed Plaintiff from the Program, effective December 6, 2018. (Complaint, ¶55). Thus, Plaintiff alleges that NYIT's decision to dismiss Plaintiff was made despite, not on account of, the psychiatrist's conclusions as to Plaintiff's fitness. On these pleadings, no plausible inference could be drawn merely from NYIT's direction that Plaintiff be evaluated by a psychiatrist, that his subsequent dismissal would not have occurred but for an impermissible animus concerning disability. This is Plaintiff's burden at this stage. *See Bohnet*, 594 F. App'x at 54.

Neither of these two arguments being availing, Plaintiff also appears to concede in his opposition that he has failed to plausibly allege disparate treatment. (*See* Pl. Opp., Pt. II.D, p. 13). While Plaintiff argues that he should be permitted the opportunity to make this showing in discovery (Pl. Opp., Pt. II.D, p. 13), where, as here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint […] has not 'show[n]' […] that the pleader is entitled to relief,'" and Plaintiff should not be permitted discovery to remedy this failing. *Iqbal*, *supra*, 556 U.S. at 679, *quoting* Fed. R. Civ. P. 8(a)(2). Again, nowhere within the Complaint does Plaintiff allege that another student without a disability engaged in the same conduct as Plaintiff and was not suspended and/or dismissed from the Program. Under similar circumstances, courts in this Circuit have routinely dismissed disability discrimination claims. *See*, *e.g.*, *Abel v. NYC Human Resources Admin.*, No. 10-cv-295, 2011

WL 812309(BSJ)(FM), at *5 (S.D.N.Y. Mar. 3, 2011) (granting 12(b)(6) motion to dismiss ADA claims where the plaintiff failed to identify any nondisabled comparators).

### B. Plaintiff's NYSHRL Discrimination and Retaliation Claims Must Be Dismissed For Failure to State a Claim

#### 1. *Plaintiff Fails to Allege a Plausible Claim of Disability Discrimination*

Plaintiff is correct in noting that the NYSHRL "ha[s] a broader definition of 'disability' than does the ADA;" as the NYSHRL does not "require[] any showing that the disability substantially limits a major life activity." (*See* Pl. Opp., Pt. III.A, p. 20, *citing Krikelis v. Vassar Coll.*, 581 F. Supp. 2d 476, 486 (S.D.N.Y. 2008)). Even assuming, *arguendo*, that Plaintiff could allege that he was disabled within the terms of the NYSHRL, which NYIT denies, any claim under that statute must still fail. Plaintiff cannot connect his dismissal with any discriminatory motivation on the part of NYIT, let alone show that such motivation was the but-for cause of his dismissal. *See Thomson v. Odyssey House*, No. 14-cv-3857 (MKB), 2015 WL 5561209, at *18 (E.D.N.Y. Sept. 21, 2015), *aff'd*, 652 F. App'x 44 (2d Cir. 2016) (recognizing broader definition of disability under the NYSHRL than the ADA, and still dismissing disability discrimination claims where plaintiff failed to plausibly allege discriminatory motivation of challenged decision).

With the exception of their respective definitions of disability, the analysis as to ADA and NYSHRL disability discrimination claims is otherwise coextensive. *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010); *see also Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004) ("New York State disability discrimination claims are governed by the same legal standards as federal ADA claims"). Accordingly, Plaintiff's NYSHRL disability discrimination claims should be dismissed for all the same reasons that Plaintiff's claims under the Acts should be dismissed, as addressed at length, *supra*, Pt. III.A.1-4. Again, there are simply no allegations in the Complaint that permit any inference of direct discriminatory animus. Plaintiff does not allege that anyone at NYIT ever

referred to or remarked upon Plaintiff's anxiety diagnosis in any way, let alone in a disparaging or degrading way. Plaintiff has also failed to support any inference of indirect discriminatory animus, as he concedes in his opposition that he cannot identify a similarly situated but non-disabled comparator who received more favorable treatment. In the absence of either direct or indirect evidence of animus, Plaintiff fails to show that any claimed disability was the "but for" cause of any challenged act by NYIT, requiring dismissal of Plaintiff's NYSHRL disability discrimination claims.

### 2.    *Plaintiff Fails to Allege a Plausible Claim of National Origin Discrimination*

While Plaintiff need not establish each *prima facie* element at the pleading stage to survive a motion to dismiss, to state a valid discrimination claim based on national origin under the NYSHRL, Plaintiff must plead allegations that allow a plausible inference of discriminatory animus due to his national origin. *See Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007), *quoting Leibovitz v. N.Y. City Transit Auth.*, 252 F.3d 179, 189 (2d Cir. 2001). To make this showing, the Complaint must give some indication of how Plaintiff's alleged national origin played a role in any challenged conduct. *Soto v. Marist Coll.*, No. 17-cv-7976 (KMK), 2019 WL 2371713, at *3 (S.D.N.Y. June 5, 2019), *citing Littlejohn*, 795 F.3d at 311; *see also Scaggs v. New York Dept. of Educ.*, No. 06-cv-0799 (JFB)(VVP), 2007 WL 1456221, at *11 (E.D.N.Y. May 16, 2007) (dismissing claims under the NYSHRL and federal law where a complaint "fail[ed] to incorporate any factual allegations that would indicate how his race, gender, age, or national origin played a role" in the conduct alleged against plaintiff). Purely conclusory allegations of discrimination, such as those advanced by Plaintiff here, are insufficient as a matter of law to infer animus. *See Soloviev v. Goldstein*, 104 F.Supp.3d 232, 249 (E.D.N.Y. 2015) ("naked assertions of discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss.")

The only challenged conduct Plaintiff makes any attempt to link to national origin-based discriminatory animus is a single alleged remark by Dr. Jackson that "Russians do not believe in modern medicine." (Compl., ¶16). Affording Plaintiff considerable latitude and assuming, *arguendo*, that this remark suggests an anti-Russian animus on the part of Dr. Jackson, no other allegations conceivably connect this claimed animus to challenged conduct in the Complaint. Plaintiff self-identifies in the Complaint "as a first-generation Ukrainian" (Complaint, ¶ 13), and thus not of Russian national origin. No allegations permit any inference that Dr. Jackson perceived Plaintiff to be Russian, as opposed to Ukrainian. Most critically, Plaintiff does not allege sufficient allegations to connect the alleged remark with any subsequent challenged adverse action, such as the denial of his appeal of a grade, his suspension or his dismissal from the Program. While the Complaint asserts that Dr. Jackson was a "member of the [Academic Standing Committee]" (Complaint, ¶36), it fails to explain what role, if any Dr. Jackson had in any challenged determination, or how any alleged anti-Russian animus influenced those determinations, if at all. The Complaint patently fails to link any adverse action to Plaintiff's self-identified Ukrainian national origin that could permit a plausible inference that any adverse action had anything to do with anti-Ukrainian animus, *let alone was motivated by such animus, even in part. See Forde v. Empire State Coll.*, No. 10-cv-9446 (CM)(THK), 2011 WL 4376499, at *3 (S.D.N.Y. Sept. 19, 2011). Any discrimination claims based on national origin must be dismissed as fatally deficient.

### 3.   *Plaintiff Fails to Allege a Plausible Claim of Disparate Treatment Based on Gender*

The Complaint arguably identifies two instances in which Plaintiff claims to have been treated differently than female students: (a) his claim that NYIT's handbook policies were applied more rigidly to him than to female students (Complaint, ¶¶ 25-26, 29-30); and (b) his claim that one particular female student received a higher overall grade than he did for a course, despite allegedly having received lower grades than he did on all prior examinations (Complaint, ¶¶29,30).

(*See* Pl. Opp., Pt. III.B, p. 20-21). To survive a motion to dismiss, however, a complaint must plead allegations sufficient to infer "at least minimal support for the proposition that [any disparate treatment] was motivated by discriminatory intent." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015). This, Plaintiff has failed to do.

Plaintiff's allegations concerning his female classmate's grade fail to supply any information about their course or any plausible basis for this Court to reasonably compare the two students' respective performance and infer that gender-based animus might explain the disparity. (*Cf.* Complaint, ¶28). In the absence of any detail to suggest that Plaintiff and his female classmate were sufficiently similarly situated to permit a comparison, these allegations fail as a matter of law to create a plausible inference that gender-based discriminatory animus explains any difference in treatment. *See Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000), *citing Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)). For the same reasons, Plaintiff's allegations concerning NYIT's enforcement of its handbook policies are also patently insufficient to state a plausible claim. Plaintiff's blanket, conclusory assertions that NYIT was more lenient with unidentified female students when enforcing some of its policies, without supplying any detail concerning these claimed comparators other than their gender, or even what these alleges policies were, necessarily fails to allege facts from which gender-based animus can be reasonably inferred.

### 4.    *Plaintiff Fails to Allege a Plausible Claim of Disparate Impact Based on Gender*

Largely unopposed in Plaintiff's opposition, Plaintiff has failed to supply allegations sufficient to infer a plausible disparate impact claim under the NYSHRL. Plaintiff fundamentally misconceives the requirements of a disparate impact claim, which concerns "significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *De La Fuente v. Sherry Netherland, Inc.*, No. 1:17-cv-4759 (PAE), 2018

WL 1597649, at *6 (S.D.N.Y. Mar. 27, 2018). While Plaintiff argues that "[NYIT's] Handbook contains facially neutral policies," his claim is that NYIT "enforce[d] [these policies] in a discriminatory manner." (Pl. Opp., Pt. III.C, p. 22; *cf.* Complaint, ¶25). Such allegations are fatally deficient on their face to state a claim for disparate impact: *treating female students better than male students* with regard to the same Handbook policies is a not an allegation of a neutral act, but an allegation of a patently discriminatory act, that is, an allegation of gender-based disparate treatment. Such claims patently cannot support a disparate impact claim. (*See* Def. MOL, Pt. II.B.4, pp. 16-17, *citing Gordon v. City of New York*, No. 14-cv-6115 (JPO), 2015 WL 3473500, at *11 (S.D.N.Y. June 2, 2015); *Attard v. City of New York*, 451 F.App'x 21, 24 (2d Cir. 2011)).

The only other argument advanced by Plaintiff in his opposition on this claim concerns his allegation that "NYIT's student population is disproportionately 85% female." (Pl. Opp., Pt. III.C, p. 22; *cf.* Complaint, ¶23). Standing alone, an allegation that "student enrollment [at NYIT] does not accurately represent the population in terms of diversity" (Complaint, ¶¶23) cannot support a plausible disparate impact claim. A plaintiff must do more than "simply to allege that there is a 'bottom line' […] imbalance in the [population] […] [i]nstead, a plaintiff must identify a facially neutral […] policy or practice […] that has a significant disparate impact on a protected class." *Tucker v. Gonzales*, No. 03-cv-3106 (LTS)(FM), 2005 WL 2385844, at *5 (S.D.N.Y. Sept. 27, 2005) (*internal citations omitted*); *see also Miller v. City of New York*, No. 15-cv-7563, 2018 WL 2059841, at *9 (S.D.N.Y. May 1, 2018), *aff'd sub nom.*, *Bloise v. City of New York*, 768 F. App'x 103 (2d Cir. 2019) ("the mere existence of a statistical imbalance between a covered entity's challenged demographic composition and the general population is not alone sufficient to establish a prima facie case of disparate impact violation unless [...] there is an identifiable policy or practice or group of policies or practices that allegedly causes the imbalance"). Plaintiff fails to supply

allegations that might explain why NYIT's student enrollment is not representatively diverse, let alone identify any neutrally applied actions or policies that might explain the disparity. Accordingly, he fails to support any plausible inference of a cognizable disparate impact cause of action, and this claim must be dismissed.

### 5.    *Plaintiff Fails to Allege a Plausible Retaliation Claim*

Plaintiff's retaliation claim under the NYSHRL must also be dismissed as he fails to allege in the Complaint that he engaged in protected activity. As asserted in NYIT's initial papers, and entirely ignored by Plaintiff in his opposition, the Complaint contains a solitary, conclusory allegation that "[a]s described above […] Schimkewitsch complained or attempted to complain about […] unlawful discriminatory practices." (*See* Complaint, ¶81; *cf*. Pl's Opp, Pt. III.E, p. 24). Such a conclusory allegation—which fails to detail precisely *in what manner* he complained, *concerning what allegedly discriminatory conduct* of which he complained or *to whom* such complaint was made—is insufficient as a matter of law to state a plausible retaliation claim. *Majeed v. ADF Companies*, No. 2:11-cv-5459 (SJF)(ETB), 2013 WL 654416, at *11 (E.D.N.Y. Feb. 20, 2013) ("[a] complaint that makes only a general conclusory statement that the defendant retaliated against the plaintiff, and that fails to provide any factual detail describing the specific acts of retaliation, when it occurred and which employee of the defendant had knowledge of the plaintiff's protected activity or actually engaged in the claimed retaliation, is insufficient to withstand a motion to dismiss").

In his opposition, Plaintiff claims that his participation in Title IX investigation as a respondent, defending himself against allegations of inappropriate conduct brought by a female classmate (*see* Complaint, ¶¶20-21), might somehow constitute protected activity. (*See* Pl. Opp., III.E, p. 24). However, there is no allegations that permits any conceivable inference that Plaintiff's participation in this investigation *protested or opposed* unlawful discrimination, and Plaintiff's retaliation clam must be summarily dismissed for this reason alone. *Marshall v. Starbucks Corp.*, No. 1:11-cv-02521 (AJN), 2012

WL 13049168, at *5 (S.D.N.Y. Sept. 17, 2012) (noting that the New York Court of Appeals has defined "protected activity" under the SHRL as "opposing or complaining about unlawful discrimination," and dismissing claim where it failed to allege any conduct that could have plausibly met this standard).

Even if a conclusory allegation that participating in a Title IX proceeding as a respondent could somehow constitute conduct that "protested or opposed unlawful discrimination," which it cannot, Plaintiff's retaliation claim further fails to connect this participation and any retaliatory act. Plaintiff fails to identify any direct retaliatory animus, and thus concedes that the only link between his participation in the Title IX proceedings and any other challenged NYIT conduct is their closeness in time. (*See* Pl. Opp., Pl. Opp., III.E, p. 24). Unfortunately for Plaintiff, all authority that "accept[s] mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality [...] uniformly hold that the temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). In fact, "district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007); *accord Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation."). The allegedly retaliatory conduct identified by Plaintiff—being placed on probation on November 9, 2017 (Complaint, ¶41); being suspended on September 3, 2018 (Complaint, ¶49); and his dismissal from the program on December 6, 2018 (Complaint, ¶55)—all took place well outside the three-month window from the conclusion of the Title IX investigation in April of 2017 (Complaint, ¶21), in which Plaintiff might plausibly have alleged sufficient temporal proximity to infer animus.

IV.     **PLAINTIFF'S BREACH OF CONTRACT AND QUASI-CONTRACT CLAIMS MUST ALSO BE DISMISSED**

Finally, Plaintiff's claims of breach of contract, unjust enrichment and quantum meruit should also be dismissed as Plaintiff's exclusive remedy to challenge any of NYIT's decisions concerning his participation in and dismissal from the Program was to timely commence a special proceeding pursuant to Article 78 of the C.P.L.R. within the applicable four-month statute of limitations. *See* N.Y. C.P.L.R. § 217. As a well-established rule, "[w]hile decisions of academic institutions are not immune from judicial scrutiny, review should be restricted to special proceedings under CPLR Article 78," rather than in a plenary contract action. *Keles v. Trustees of Columbia Univ. in City of N.Y.*, 903 N.Y.S.2d 18, 18 (1st Dep't 2010). "[T]he review of a variety of academic decisions at private educational institutions has been limited to Article 78 proceedings, including: grading disputes, dismissals, expulsions, suspensions, and decisions regarding whether a student has fulfilled the requirements for graduation." *Ansari v. New York Univ.*, No. 96-cv-5280 (MBM), 1997 WL 257473, at *2 (S.D.N.Y. May 16, 1997). Where a challenge, even if pleaded as a breach of contract or other plenary claim, requires "an analysis of the quality of instruction or another discretionary decision" then a plaintiff's only available remedy is through a timely-filed special proceeding pursuant to Article 78. *Id*. at *3.

Contrary to Plaintiff's assertion in his Opposition, there can be no dispute that Plaintiff here seeks to challenge the propriety of NYIT's academic and administrative decisions concerning his dismissal from the Program. (*See* Pl. Opp., Pt. II.A, *citing* Complaint, ¶¶66, 83-86). Defendant has identified a wealth of jurisprudence, both in the federal district courts and in New York state courts, reviewing claims virtually identical to those pleaded here. These claims, while couched in terms of breach of contract, still at their essence challenge the propriety of a student's dismissal from a university, and thus require an analysis of a university's academic discretion in applying its rules and procedures. (*See* Def. MOL, Pt. III.A, p. 20-22 (*collecting authority*)). Each such claim was uniformly found to be reviewable exclusively

in timely-filed challenges pursuant to Article 78 and were held to be subject to dismissal where brought instead as untimely plenary contract claims. (*Id.*)

Plaintiff does not meaningfully address this well-established body of authority, nor does he address whether his claims ultimately challenge NYIT's exercise of academic discretion. To the extent Plaintiff challenges NYIT's denial of his appeal of a grade in or around April of 2017 (*see* Complaint, ¶¶18,19,36), he concedes that such an appeal was afforded some type of process, in that he "attended [...] a[n] ASC meeting to appeal his grade" (Complaint, ¶36), even if the appeal was ultimately denied. Similarly, although he arguably complains concerning how he was disciplined relative to his absence from class in November of 2017 (*see* Complaint, ¶40-41), he again concedes that this issue was reviewed by a committee at an ASC meeting. (Complaint, ¶41). All plausible challenges in the Complaint[2] therefore unequivocally seek review of the merits of NYIT's determinations concerning such issues as whether to grant an appeal of a grade, how to discipline absenteeism and how to appropriately discipline alleged misconduct. All claims thus necessarily seek judicial review of a discretionary academic function, may not be challenged in a plenary breach action, and are thus untimely. *Papaspiridakos v. Educ. Affiliates, Inc.*, 580 Fed. Appx. 17, 18 (2d Cir. 2014) ("'[I]nternal administrative and academic determinations [...] are redressable, if at all, in an Article 78 proceeding, not a plenary action.'").

As Plaintiff notes, New York law does permit a breach of contract claim by a student against a university, but only in one extremely narrow context, not at all applicable here. "[W]hile a school may be subject to a cause of action for breach of contract, this requires a contract which provides for '*certain specified services*' as 'courts have quite properly exercised the utmost restraint applying traditional legal rules to disputes within the academic community.'" *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 369 (S.D.N.Y. 2016), *citing Baldridge v. State*, 740 N.Y.S.2d 723, 725 (3d Dep't 2002) (*emphasis*

---

[2]   Any claim that NYIT "disparately applied the terms of the Handbook" (Complaint, ¶ 26-32) are disparate treatment claims, not contract claims, and must be dismissed for all the reasons set forth *supra* at Pts III.A-C.

*added*). Qualifying promises for "certain specified services" have been found to survive on a motion to dismiss in only a handful of cases, on entirely dissimilar facts. *See, e.g.*, *Novio v. New York Acad. of Art*, 317 F. Supp. 3d 803, 814 (S.D.N.Y. 2018) (concerning, *inter alia*, express promises to "to designate a Title IX coordinator" and "to provide career services"); *Ansari*, *supra*, No. 96-cv-5280 (MBM), 1997 WL 257473, at *3 (express promises of "state-of-the-art facilities" and "faculty tutor-advisors"); *Clarke v. Tr. of Columbia Univ. of City of N.Y.*, No. 95-cv-10627 (PKL), 1996 WL 609271, at *1 (S.D.N.Y. Oct. 23, 1996) (express promise of "one-and-a-half to two-hour weekly supervision conference"). No such failure to provide "certain specified services" has been plausibly pleaded in the Complaint.

To state a claim for failure to provide "certain specified services" under the narrow exception, "the services identified [must be] specifically designated and discrete promises." *Ward v. New York Univ.*, No. 99-cv-8733 (RCC), 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000). "General policy statements" and "broad and unspecified procedures and guidelines" will not suffice. *Id*. The only "certain specified service" that Plaintiff makes any attempt to identify in his opposition is "the right to appeal grades, absence[s] [sic], discipline and degree policies." (Pl. Opp., Pt. II.A, p. 16). As argued in NYIT's initial motion papers and unaddressed in Plaintiff's opposition, any claim concerning an alleged right to appeal NYIT's administrative decisions concerning grades or discipline are patently insufficient as pleaded. Here, again, Plaintiff entirely fails to specify what NYIT's appeal procedures were, if any; what guidelines were to be followed in deciding an appeal; whether Plaintiff performed his obligations under this procedure, if any; or, indeed any Handbook language or its specific terms sufficient for this Court to evaluate a breach claim.

All other challenged conduct in the Complaint refers not to the breach of any specific NYIT policy, but rather, Plaintiff's disagreement with NYIT's ultimate academic and administrative decisions, including, ultimately, the determination to dismiss him from the Program. (*See* Complaint, ¶¶46-49).

Such allegations are patently insufficient to state a breach of contract claim, or any other plenary claim, by a student against a university. *Okoh v. Sullivan*, No. 10-cv-2457, 2011 WL 672420, at *4 (S.D.N.Y. Feb. 24, 2011), *aff'd*, 441 F.App'x 813 (2d Cir. 2011), *quoting Gally v. Columbia Univ.*, 22 F.Supp.2d 199, 206-207 (S.D.N.Y. 1998).

NYIT notes that the entirety of Plaintiff's argument in Pt. II.B of his opposition—concerning the availability of plenary claims against a university, and whether Article 78 review is a student's exclusive remedy—misapplies the law and is inapplicable to these pleadings and these claims. (*See* Pl. Opp., Pt. II.B, p. 17-19). All of the authority cited by in this section of his opposition concern due process challenges to state action, and whether the availability of an Article 78 challenge to state action bars a procedural due process claim under 42 U.S.C. § 1983. *See*, *e.g.*, *Reyes v. Cty. of Suffolk*, 995 F. Supp. 2d 215, 227 (E.D.N.Y. 2014). Plaintiff has not pleaded and could not conceivably assert a procedural due process claim against NYIT, a private entity. This entire passage of Plaintiff's opposition fails to even address the relevant point that, ordinarily, and absent extremely limited circumstances not applicable here, a student's exclusive remedy to challenge an academic and administrative determination by a university is pursuant to Article 78. *See Attallah v. New York Coll. of Osteopathic Med.*, 94 F. Supp. 3d 448, 457 (E.D.N.Y. 2015), *aff'd*, 643 F. App'x 7 (2d Cir. 2016) (*collecting authority*).

Finally, Plaintiff entirely fails to address Defendant's arguments that: (1) quantum meruit and unjust enrichment are not separate causes of action, but rather a single quasi-contract claim at law, properly analyzed together (Def. MOL, Pt. III.B.2, pp. 24-25); (2) to plausibly state such a claim, at a minimum, circumstances requiring that "equity and good conscience require[ing] [a] defendant[ ] to make restitution" (Def. MOL, Pt. III.B.2, p. 25), which Plaintiff has entirely failed to allege. Plaintiff has failed to cite to any authority that would support his assertion that simply on account of his enrollment in a university, he should be entitled to a refund if he failed to graduate.

## <u>CONCLUSION</u>

For the reasons set forth above and in NYIT's initial moving papers, NYIT respectfully requests that this Court dismiss the Complaint in its entirety, with prejudice, and award NYIT such other and further relief as this Court deems just and proper.

Dated:   New York, New York
         February 3, 2020

Respectfully Submitted,

CLIFTON BUDD & DeMARIA, LLP
*Attorneys for Defendant NYIT*

By:_____
         Douglas P. Catalano
         Stefanie R. Toren
         Stephen P. Pischl