FILED
CLERK
1:57 pm, Jun 04, 2020
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ELIJAH SCHIMKEWITSCH,

                      Plaintiff,

  -against-

NEW YORK INSTITUTE OF TECHNOLOGY,

                      Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
CV 19-5199 (GRB)(AYS)

**GARY R. BROWN, United States District Judge:**

      In this action, plaintiff Elijah Schimkewitsch, a former student who was expelled from the Physician Assistant program operated by defendant New York Institute of Technology ("defendant" or "NYIT"), alleges that his expulsion resulted from actionable discrimination based on gender, national origin, and perceived and actual disability. Compl. ¶¶ 67-81, Docket Entry ("DE") 1. Additionally, he asserts several contractual-type claims arising from his expulsion, including the loss of tuition payments. *Id.* at ¶¶ 82-92. Before the Court is a motion to dismiss all causes of action by defendant, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). DE 11. For the reasons set forth herein, defendant's motion is granted in part and denied in part, to wit: plaintiff's discrimination claims of gender, national origin, actual disability and retaliation are dismissed without prejudice, while the breach of contract, unjust enrichment and quantum meruit and all claims under the New York City Human Rights Law ("NYCHRL") and Nassau County Human Rights Law are dismissed with prejudice. Defendant's motion is denied as to the claims of perceived disability.

1

## BACKGROUND

On September 11, 2019, plaintiff commenced this action by filing a complaint. DE 1. At all times relevant herein, plaintiff was a 25-year-old student in NYIT's Physician Assistant program suffering from an anxiety disorder, which may have been undiagnosed until the events described herein. Compl. ¶ 7. The following pertinent facts are taken from plaintiff's complaint and are assumed to be true for purposes of this motion and are construed in the light most favorable to plaintiff, the non-moving party:

### 1. *National Origin Allegations*

During an epidemiology class, part of the course of study in the subject Physician Assistant program, the professor, Dr. David Jackson, asked students if anyone had been born outside of the United States. *Id.* at ¶¶ 13-14. Plaintiff identified himself as a "first-generation Ukranian [sic]." *Id.* at ¶ 15. The complaint conclusorily asserts that from that moment forward, Dr. Jackson and other faculty and administration members started treating him "worse than other students," including making a remark that "Russians do not believe in modern medicine." *Id.* at ¶¶ 15-16. One example provided of the alleged mistreatment of plaintiff arises from his appeal of a grade of B+ in an unidentified course (though seemingly not the epidemiology class) in which his average was 0.1% below the standard for an A, which appeal was "summarily denied." *Id.* at ¶¶ 18-19. That denial was not by Dr. Jackson, but rather by the chairperson of the program. *Id.* The complaint provides no factual link between the revelation of plaintiff's Ukrainian heritage and the denial of his grade appeal.

    2. *Gender Discrimination Allegations*

Plaintiff claims that he suffered gender discrimination following a Title IX investigation of plaintiff arising from an undescribed classroom "interaction" between plaintiff and a female student, which investigation seemingly cleared plaintiff of wrongdoing. *Id.* at ¶¶ 20-22. Plaintiff alleges that female students comprised 85% of the NYIT Physician Assistant program, and that those students were permitted to violate NYIT's handbook policies, while rigid adherence was expected of him, because he was male. *Id.* at ¶¶ 24-28. The complaint states that (1) a female student received a higher grade in a class than plaintiff, though plaintiff had a higher average; (2) the dress code was applied more leniently to female students than male students; and (3) female students could be absent from class with impunity, while he was disciplined for a single absence. *Id.* at ¶¶ 28-31. Plaintiff further claim that the lack of gender diversity in the program demonstrates a "disparate impact" on male students. *Id.* at ¶ 32.

    3. *Disability and Perceived Disability Allegations*

Apparently, as a result of the above-described grade appeal, plaintiff was summoned via email to a meeting with the program chairperson, an email which, because he was attending a lecture, plaintiff did not read until he arrived at home. *Id.* at ¶¶ 33-34. The following day, the chairperson advised plaintiff that he would be required to appear before the Academic Standing Committee ("ASC") to "discuss professionalism," apparently based on his failure to appear at the meeting following the email invitation. *Id.* at ¶ 35. Following an ASC meeting in connection with the grade appeal, Dr. Jackson advised plaintiff that he "should get psychiatric counseling or executive coaching." *Id.* at ¶ 36.

In or around November 2017, plaintiff missed a single, unidentified class, and was summoned before the ASC, which procedure allegedly violated Student Handbook policies. *Id.* at ¶ 40. He was placed on probation and told that if he missed another class, expulsion would follow. *Id.* at ¶ 41. In July through August 2018, he completed a clinical rotation at "Long Island Jewish Medical Center in Lake Success, New York." *Id.* at ¶ 42. According to the complaint, following three days of 12-hour shifts, plaintiff was assigned to "work a 27-hour shift." *Id.* at ¶ 43. During one of these shifts, plaintiff made a request of his team members, including his supervisor, to take a four-hour break to get some sleep. *Id.* at ¶ 44. After three hours had elapsed, he was awakened and directed to speak to "his preceptor," who sent him home because he had taken the break. *Id.*

The complaint further alleges that at a meeting on August 13, 2018, false accusations were presented (the complaint does not say by whom), suggesting that plaintiff had been sent home not because of his period of repose, but because he had engaged in behavior that "risked patient harm" by "intentionally adversely affecting the treatment of a patient." *Id.* at ¶¶ 46-47. Few details are provided, yet plaintiff contends, in sum and substance, that the school failed to adequately investigate these charges. *Id.* at ¶ 47. He was removed from the clinical clerkship and, on September 3, 2018, placed on emergency suspension. *Id.* at ¶¶ 48-49.

Defendant required plaintiff to obtain a psychiatric clearance before returning to school, so he met with a school-affiliated psychiatrist who diagnosed plaintiff as suffering from an anxiety disorder. *Id.* at ¶¶ 49-50. Plaintiff reports that the psychiatrist, despite the diagnosis, found that plaintiff was fit to resume his academic studies. *Id.* at ¶ 53. In December 2018, NYIT "summarily dismissed" plaintiff from the program. *Id.* at ¶ 55.

Plaintiff, who had completed a substantial portion of the program, paid significant tuition charges and incurred $ 92,400 in student debt. *Id.* at ¶ 59. He alleges that NYIT failed to engage in a dialogue with plaintiff or the psychiatrist to explore reasonable accommodations that would allow him to continue his studies and otherwise violated its policies. *Id.* at ¶¶ 61-63.

Based on the allegations, the complaint purports to set forth claims of discrimination based upon disability, perceived disability, gender, ethnicity and retaliation, as well as claims sounding in breach of contract, unjust enrichment and quantum meruit, and seeks damages of $5 million. *Id.* at ¶¶ 67-99.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Denicolo v. Bd. of Educ. of City of New York*, 328 F. Supp. 3d 204, 208 (S.D.N.Y. 2018); *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 535 (S.D.N.Y. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citations omitted) (quoting *Twombly*, 550 U.S. at 556-57); *see also Denicolo*, 328 F. Supp. 3d at 209. In applying this standard, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party, *see Denicolo*, 328 F. Supp. 3d at 208; *Quadir*, 39 F. Supp. 3d at 535. Furthermore, the court should not credit "[t]hreadbare recitals of the elements of a cause of action" or "mere conclusory statements." *Iqbal*, 556 U.S. at

5

678; *see also Quadir*, 39 F. Supp. 3d at 536. Ultimately, the plaintiff's allegations of fact "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.

## DISCUSSION

1. *National Origin and Gender Discrimination Claims*

Plaintiff asserts national origin and gender discrimination under the New York State Human Rights Law ("NYSHRL"), but not under federal law. Compl. ¶¶ 73-78. "New York Courts examine claims under [the NYSHRL] with the same analytical lens as corresponding Title VII-based claims." *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 217 (E.D.N.Y. 2019) (citing *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)); *see also Motta v. Global Contract Servs.*, No. 15-CV-8555 (LGS), 15-CV-8892 (LGS), 2016 WL 2642229, at *2 (S.D.N.Y. May 4, 2016). To survive a motion to dismiss in this context, "a plaintiff need only allege facts that plausibly support that the plaintiff is a member of a protected class, was qualified for the position he held, and suffered an adverse employment action that offers at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Levy*, 408 F. Supp. 3d at 214 (citing *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)). "To allege the requisite discriminatory intent, a plaintiff may allege 'facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'" *Id.* (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)).

A careful review of the plaintiff's complaint reveals only skeletal allegations in support of national origin and gender discrimination claims. Plaintiff's national origin claim appears to emanate from his revelation in response to a class-wide question by a professor that he was born

6

in Ukraine, and a private discussion in which that professor commented negatively concerning the "Russian" view of modern medicine. Compl. ¶¶ 13-16. The complaint attempts to spin these exchanges with a single professor into a wide-ranging effort among the entire faculty and administration to discriminate against plaintiff based upon his national origin. But such "stray" remarks, particularly made by an individual not alleged to be a decisionmaker regarding plaintiff's expulsion, cannot, without more, support a discrimination claim. *See, e.g.*, *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) ("Isolated comments, while potentially offensive, do not lead to an inference of discriminatory intent."). Given the paucity of facts, one cannot view this claim as rising above the level of mere speculation, particularly viewed in light of plaintiff's concurrent claims of gender and disability discrimination.

Plaintiff's gender discrimination claim fares only marginally better. Plaintiff asserts both disparate treatment and disparate impact theories of gender discrimination under NYSHRL. Compl. ¶¶ 73-76. As the Second Circuit explained,

> 'Disparate treatment is the most easily understood type of discrimination. The [defendant] simply treats some people less favorably than others because of their race, color, religion or other protected characteristics. Proof of discriminatory motive is critical.' *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (cleaned up).
>
> 'Claims that stress disparate impact by contrast involve . . . practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.
> Proof of discriminatory motive is not required under a disparate-impact theory." *Id*. (cleaned up).

*Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins. Co.*, 955 F.3d 305, 311 (2d Cir. 2020).

As to disparate treatment, while the complaint alleges—in a general and conclusory fashion—that various policies are strictly enforced against male students while leniently administered as to female student, the details supporting such a claim are simply absent. *Cf.*

*Medina v. Waste Connections of New York, Inc.*, No. 19-CV-291 (RA), 2019 WL 3532048, at *7 (S.D.N.Y. Aug. 2, 2019) (holding, in a race discrimination case, the allegation that plaintiff "was locked out of the company's paycheck system for over two months, where as 'none of the white employees had been locked out of the system" was "too general to support an inference of discriminatory intent."); *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 612 (E.D.N.Y. 2017) ("Plaintiff alleges few facts to suggest a plausible inference of discriminatory motive."). A single instance of plaintiff having a higher average than a female colleague but receiving a lower grade does not supply sufficient information to render this claim plausible, nor do the conclusory references to differential enforcement of dress code and attendance policies. *Cf. Stinnett*, 278 F. Supp. 3d at 612 (citing *Vega*, 801 F.3d at 87) ("Plaintiff's allegations also do not demonstrate a ''mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination' since she only alleges a single incident.'").

"The elements of a disparate impact claim are (1) a specific employment practice or policy, (2) a disparity between members and nonmembers of a protected class and (3) 'a causal relationship between the two.'" *Motta*, 2016 WL 2642229, at *2 (citing *Chin v. Port Auth. Of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012)), *aff'd*, 675 F. App'x 98 (2d Cir. 2017); *see also Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 428 (S.D.N.Y. 2014). "The facially-neutral 'policy' must be something more than an isolated incident." *Barrett*, 39 F. Supp. 3d at 428.

Plaintiff attempts to salvage the gender discrimination claims by invoking the fact that 85% of the students in the program are female. This figure, standing alone, raises more questions than it answers. Moreover, plaintiff's suggestion that the student body's composition

8

fails to reflect the larger population does not, even with conclusory statements of disparate impact, support the kinds of claims raised here. As one court held:

> In order to establish a prima facie case of disparate impact, it is not enough for a plaintiff simply to allege that there is a "bottom line" racial imbalance in the workplace. *Connecticut v. Teal*, 457 U.S. 440, 450-51 (1982). Instead, a plaintiff must identify a facially neutral employment policy or practice of the employer that has a significant disparate impact on a protected class. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 430-32 (1971); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998); *Kulkarni v. City Univ. of New York*, No. 01 Civ. 10628 (DLC), 2002 WL 1315596, at *1 (S.D.N.Y. June 14, 2002).

*Tucker v. Gonzales*, No. 03-CIV-3106 (LTS)(FM), 2005 WL 2385844, at *5 (S.D.N.Y. Sept. 27, 2005). Plaintiff has entirely failed to identify a significant disparate impact of a facially neutral policy. Thus, the gender discrimination claims must be dismissed.

2. *Disability and Perceived Disability*

To state a claim for disability discrimination under the ADA, a plaintiff must properly allege that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Dass v. City Univ. of New York*, No. 18-CV-11325 (VSB), 2020 WL 1922689, at *7 (S.D.N.Y. Apr. 21, 2020).

"To determine whether or not a plaintiff suffers from a disability, the Supreme Court compels district courts to follow a three-step process to conclude: '(1) whether plaintiff had an impairment; (2) whether the impairment affected a 'major life activity' within the meaning of the ADA; and (3) whether that major life activity was substantially limited by the impairment.'" *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 145 (E.D.N.Y. 2018), *reconsideration denied*,

9

2019 WL 1433095 (E.D.N.Y. Mar. 29, 2019). "[C]ourts have been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those activities." *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998) (emphasis original); *see also Gray v. Licon-Vitale*, No. 3:19-CV-1291 (MPS), 2020 WL 1532307, at *4 (D. Conn. Mar. 31, 2020) (citing *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 852 (2d Cir. 2013); *Ryan*, 135 F.3d at 870); *Laface*, 349 F. Supp. 3d at 147 (quoting *Ryan*, 135 F.3d at 870).

Defendant correctly argues, on this motion, that the allegations are insufficient to suggest that plaintiff suffered from an actionable disability, to wit: one that substantially limits a major life activity. While anxiety disorder could, depending on its manifestation, constitute a disability under the statute, the allegations here do not meet the standard. *Cf. Ryan*, 135 F.3d at 872 ("Because the determination whether an impairment 'substantially limits' a major life activity is fact specific, our decision does not mean that colitis may never impose such a limitation."). In fact, while plaintiff argues that his anxiety disorder (which appears to have been undiagnosed before the events described in the complaint) interferes with his ability to pursue educational studies (with or without some unidentified accommodation), the allegations plainly undermine this assertion. *See, e.g.,* Compl. ¶ 53 (psychiatrist certified that diagnosis did not impact ability to participate in program), *id.* at ¶ 56 (plaintiff maintained 3.5 GPA in program).

However, whether plaintiff suffered discrimination based upon a perceived disability is, on these allegations, another matter. A person is "regarded as having" an impairment if he or she "'establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.' " *Laface*, 349 F. Supp. 3d at 147; *see also* 42 U.S.C. § 12102(1)(C) & (3). "This inquiry 'turns on the employer's perception of the employee and is

10

therefore a question of intent, not whether the employee has a disability.'" *Laface*, 349 F. Supp. 3d at 147 (citation omitted).

The allegations, assumed to be true for the purposes of this motion, include the following: after the conclusion of a committee meeting, a professor advised plaintiff to get "psychological counseling or executive coaching." Compl. ¶ 36. In a vacuum, such advice, particularly modified by the "executive coaching"—a common practice in professional settings—would not support the claim. But subsequent events, such as (1) plaintiff's "emergency suspension" by which defendant required plaintiff to obtain a "psychiatric clearance," (2) the subsequent diagnosis of plaintiff by a psychiatrist associated with the defendant modified by a representation that he was fit to return to school and (3) his expulsion, allegedly in violation of school policies, taken together, are sufficient to support the claim of discrimination based upon a perceived disability at this early juncture.

3. *Retaliation Claim*

To state a claim for retaliation under the ADA, the Rehabilitation Act, or the NYSHRL, Plaintiff's pleading must plausibly suggest that: "[i][ ]he engaged in protected activity, [ii] the [defendant] was aware of this activity, [iii] [ ] he was subjected to an adverse [ ] action, and [iv] a causal connection existed between the alleged adverse [ ]action and [his] protected activity." *Warmin v. New York City Dep't of Educ.,* No. 16 CIV. 8044 (KPF), 2019 WL 3409900, at *7 (S.D.N.Y. July 29, 2019) (citing *McGuire-Welch v. House of the Good Shepherd*, 720 F. App'x 58, 62 (2d Cir. 2018); *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)). Plaintiff need not allege a disability to sustain a retaliation claim. *Kelly v. New York Office of*

11

*Mental Health*, 200 F. Supp. 3d 378, 403 (E.D.N.Y. 2016); *see also Seitz*, 2019 WL 4805257, at *14.

Here, plaintiff entirely fails to identify any protected activity in which he engaged. Thus, the retaliation claim cannot withstand the motion to dismiss.

    4. *Contract and Related Claims*

NYIT moves for dismissal of plaintiff's breach of contract, unjust enrichment and incongruous quantum meruit claims, asserting that the appropriate legal vehicle for such claims is an Article 78 proceeding. Under state law, special consideration applies to such actions when brought against an educational institution. "While decisions of academic institutions are not immune from judicial scrutiny, review should be restricted to special proceedings under CPLR Article 78," as opposed to a contract or quasi-contractual claim. *Keles v. Trustees of Columbia Univ. in City of N.Y.*, 903 N.Y.S.2d 18, 18 (1st Dep't 2010); *see also Papaspiridakos v. Educ. Affiliates, Inc.,* 580 F.. App'x. 17, 18 (2d Cir. 2014) ("'[I]nternal administrative and academic determinations [. . .] are redressable, if at all, in an Article 78 proceeding, not a plenary action.'"). Where, as here, the complaint seeks "review of a variety of academic decisions at [a] private educational institutions [ ] including: grading disputes, dismissals, expulsions, suspensions, and decisions regarding whether a student has fulfilled the requirements for graduation," under state law such review "has been limited to Article 78 proceedings," *Ansari v. New York Univ.*, No. 96-cv-5280 (MBM), 1997 WL 257473, at *2 (S.D.N.Y. May 16, 1997).

    As one court held:

> The nature of the relief sought is key to determining whether Article 78 applies. In *Gally*, a former dental student brought a lawsuit against a dental school, asserting breach of contract and constructive discharge from the dental school. 22 F. Supp. 2d at 204. The district court rejected the argument that the dental student's suit had to be

12

> brought in an Article 78 proceeding because the dental student sought "neither to compel nor to prohibit any action by defendants," and instead sought "monetary damages for injuries allegedly suffered as a result of defendants' breach of its contractual obligations." *Id.* at 205. Similarly, in *Papaspiridakos v. Education Affiliates, Inc.,* the district court concluded that a nursing student's claims did not need to be brought in an Article 78 proceeding because the plaintiff did "not seek to compel any action by Defendant, and instead seeks monetary damages for breach of contract and deceptive business practices." No. 10 CV 5628(RJD)(JO), 2013 WL 4899136, at *2 (E.D.N.Y. Sept. 11, 2013), *aff'd*, 580 Fed. Appx. 17 (2d Cir. 2014).

*Rolph v. Hobart & William Smith Colleges*, 271 F. Supp. 3d 386, 404 (W.D.N.Y. 2017). Here, the complaint seeks a range of declaratory and injunctive relief, confirming that this action falls within the ambit of the Article 78 bar.

5. *Claims under the New York City and Nassau County Human Rights Law*

The claims asserted under the New York City Human Rights Law ("NYCHRL") face an insurmountable hurdle: the NYCHRL applies only within the jurisdictional boundaries of New York City. *Hoffman v. Parade Publications*, 15 N.Y.3d 285, 289 (2010) (citing NYC Admin. Code § 8–101 (statute covers only "those who inhabit or are 'persons in' the City of New York")). On this motion, plaintiff contends that the claim could survive as the "effects" of his expulsion impacted New York City. But it is difficult to see how: as set forth in the complaint, he resided on Long Island, the surgical residency from which he was discharged was in Lake Success, New York, and the situs of the school program was also located on Long Island. Counsel attempts to resuscitate this claim by asserting that part of a subsequent residency may have been in New York City. This contention does not find support within the four corners of the complaint, and seems, in any event, too speculative to sustain the charge. Therefore, the claim is dismissed.

As to the Nassau County Human Right Law, defendant correctly argues that this statute does not provide for a private right of action. *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 331 (E.D.N.Y. 2014); *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 311 (E.D.N.Y. 2014). Plaintiff's counsel offers no response. Thus, as to the Nassau County Human Right Law, the motion is granted as unopposed and on the merits.

6. *Leave to Amend*

"Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend the pleadings should be freely given when justice so requires." *Edwards v. Thomson Reuters (Tax & Accounting) Inc.*, No. 19 CIV. 93 (ER), 2020 WL 2132348, at *5 (S.D.N.Y. May 5, 2020).

Plaintiff seeks leave to replead claims subject to dismissal. Of course, under the case law, such leave should be freely given, and thus the discrimination claims subject to dismissal are dismissed without prejudice. Granting this application should not be viewed as aspirational, and plaintiff's counsel is cautioned that repleading should be undertaken only if warranted by the available facts.

14

## CONCLUSION

Based on the foregoing, defendant's motion is granted in part and denied in part. Plaintiff's discrimination claims of gender, national origin, actual disability and retaliation are dismissed without prejudice, while the breach of contract, unjust enrichment and quantum meruit and all claims under NYCHRL and Nassau County Human Rights Law are dismissed with prejudice. Defendant's motion is denied as to the claims of perceived disability.

**SO ORDERED.**

Dated: Central Islip, New York
      June 4, 2020                                  /s/ Gary R. Brown
                                                               GARY R. BROWN
                                                               United States District Judge