UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
ELIJAH SCHIMKEWITSCH,

                Plaintiff,

-against-

NEW YORK INSTITUTE OF TECHNOLOGY,

                Defendant.
------------------------------------------------x

FIRST AMENDED
VERIFIED
COMPLAINT

Index No.:
2:19-CV-05199 (GRB) (AYS)

JURY TRIAL DEMANDED

Plaintiff, Elijah Schimkewitsch, by his attorneys, Gilbert Law Group, alleges upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a civil action for injunctive relief and compensatory, punitive, and other monetary damages, proximately resulting from Defendant's violations of §504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq., Title III of the American With Disabilities Act, 42 U.S.C. §12182, et seq., New York State Human Rights Law, Executive Law § 290 et seq., the New York City Human Rights Law, Administrative Code § 8-101 *et seq*.; and all other Constitutional, common law or statutory causes of action which arise from or can be inferred from the facts set forth herein.

2. This action is brought for the purpose of seeking appropriate remedies for violations of Plaintiff's Constitutional, statutory, and common law right, including, but not limited to, disability-based discrimination. Specifically, Plaintiff's graduate school and employer, including the above-named Defendant, engaged in a continuing course of conduct and pattern of acute and pervasive discrimination and harassment due to Plaintiff's disability, record of disability, and/or regarding Plaintiff as disabled. The discrimination and harassment included, but are not limited to,

expelling Plaintiff from New York Institute of Technology's Physician Assistant Program, resulting in further pecuniary losses, injuries, and compensatory damages, which have continued to date. Plaintiff seeks all appropriate remedies including, but not limited to, the above-enumerated items, and all appropriate relief to which he is or may be entitled under the law.

## JURISDICTION AND VENUE

3. Jurisdiction is conferred on the Court by the aforementioned statutes and Constitutional provisions, as well as the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., and 28 U.S.C. §§1331. This Court has supplemental jurisdiction over Plaintiff's state and/or local law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper pursuant to 28 U.S.C. §1391.

## PARTIES

5. Plaintiff Elijah Schimkewitsch ("Schimkewitsch" or "Plaintiff") is an individual, a United States citizen, and "person" as defined in 29 U.S.C. §203(a), 42 U.S.C. §12111(7), and New York Executive Law §292(1). Schimkewitsch was and still is a resident of Nassau County, New York.

6. Defendant New York Institute of Technology ("NYIT"), at all times hereinafter mentioned, was and still is an education corporation of the State of New York within the meaning of New York Executive Law § 296(4), and is located and does business both in Nassau County, New York, Kings County, New York, Queens County, New York, and New York County, New York. NYIT receives federal assistance in various forms, including financial aid.

## FACTS

7. Schimkewitsch was born on March 8, 1994, and is currently a 26-year old male diagnosed with anxiety disorder.

8. In or around May 2016, Schimkewitsch graduated from an NYIT undergraduate program earning a Bachelor of Science Degree.

9. After earning a Bachelor of Science Degree from NYIT, Schimkewitsch applied for and was accepted to an NYIT graduate school program, for a Master of Science Physician Assistant Studies degree at the NYIT School of Health Professions.

10. In or around September 2016, Schimkewitsch commenced full-time matriculation in his pursuit of a Master's Degree in Physician Assistant Studies at the NYIT School of Health Professions ("PA Program").

11. Schimkewitsch attended NYIT School of Health Professions in order to obtain certification and licensure as a medical professional and, specifically, a Physician Assistant (PA).

12. At all relevant times, Schimkewitsch's grades at NYIT were uniformly excellent.

***NYIT Discriminated Against Schimkewitsch Because of His Disability,
its Perception of Him as Being Disabled, and His Record of Disability***

13. In or around May 2017, Schimkewitsch was attending lectures from 8:00 a.m. through 12:00 p.m. Schimkewitsch received an email from Assistant Professor and Chairperson of the Physician Assistant Studies Program, who also sat on the Academic Standing Committee ("ASC"), Anoma Zehra Ahmed ("Ahmed") at approximately 11:50 a.m., requesting that he meet immediately following the conclusion of the lecture.

14. The Academic Standing Committee is the committee responsible for recommending that Schimkewitsch be expelled from his enrollment at NYIT.

15. Schimkewitsch did not see Ahmed's email until he had arrived home following the lecture. He immediately responded that he unfortunately was unable to attend the requested meeting. In response, Ahmed accused Schimkewitsch of acting unprofessionally.

16. The following day, Ahmed called Schimkewitsch into a meeting to tell him that he would be required to attend an ASC meeting to discuss professionalism.

3

17. In or around May 2017, Schimkewitsch had requested to appeal a grade he had received. NYIT summarily denied the appeal without sufficiently processing it.

18. On or about May 24, 2017, Schimkewitsch was called to a meeting to address the short-notice meeting he had failed to attend. Rather than address this issue however, the focus of the meeting was to tell Schimkewitsch that he may not appeal his grade. Confused, Schimkewitsch responded by calmly asking questions seeking clarification regarding why he could not appeal his grade and what his academic rights were. The ASC intimated that Schimkewitsch was out of line for his questions and accused him of being unprofessional.

19. After the meeting concluded, Schimkewitsch contacted his academic advisor, Dr. David Jackson, who was also a participating member of the ASC. Dr. Jackson told Schimkewitsch that he "should get psychiatric counseling or executive coaching." Accordingly, it is evident that the ASC and other NYIT agents perceived Schimkewitsch as being psychologically disabled.

20. At no point during the aforementioned ASC meeting did the ASC specify, explain, or identify how Schimkewitsch had engaged with Ahmed unprofessionally.

21. During his time at NYIT, Schimkewitsch received a letter of recommendation from a Manager in the Advising and Enrichment Department, and continued to earn excellent grades.

22. From the moment the ASC identified and/or regarded Schimkewitsch as being psychologically disabled, the ASC and/or other NYIT agents commenced a pattern and practice of targeted harassment as part and parcel of an agenda to expel Schimkewitsch from the program due to his disability, record of being disabled, and their perception of him as being disabled.

23. From the moment the ASC identified and/or regarded Schimkewitsch as being psychologically disabled, the ASC and/or other NYIT agents commenced a pattern and practice of targeted harassment and disparate treatment as part and parcel of an agenda to exacerbate his actual or perceived disability and ultimately constructively discharge or expel Schimkewitsch from the

4

program due to his disability, record of being disabled, and their perception of him as being disabled.

24. As part and parcel of its agenda to dismiss Schimkewitsch due to his actual disability, record of disability, or perceived disability, NYIT repeatedly and consistently violated and/or deviated from its own written policies in its treatment of Schimkewitsch.

25. By deviating from and/or violating its own written policies, NYIT targeted and subjected Schimkewitsch to acute harassment and disparate treatment due to his actual or perceived disability, or record of being disabled.

26. On multiple occasions, NYIT unilaterally and without warning altered its student handbook in such a way as to aid it in its discriminatory agenda to dismiss Schimkewitsch from the PA program without a legitimate, non-discriminatory basis.

27. In or around November 2017, Schimkewitsch accidentally missed a single class. Ahmed ignored and violated Student Handbook policy and immediately scheduled Schimkewitsch to appear before the ASC, without requesting any information regarding the circumstances for Schimkewitsch's absence. At the ASC meeting, the Committee failed to identify any alleged conduct or basis for calling Schimkewitsch to appear before it.

28. As a result of Schimkewitsch missing a single class on November 9, 2017, he was placed on probation and told that if he missed another class, he would be dismissed from the program. Pursuant to the Student Handbook, however, the school may, after ***three absences***, decrease a student's grade by a full letter. At the time, the Student Handbook did not permit NYIT to unilaterally and/or summarily place a student on probation after a single absence, let alone dismiss a student from the program. This significant deviation from school policy constitutes a violation of its own rules, and establishes the school's discriminatory animus as it relates to the actions taken against Schimkewitsch because of his actual or perceived disability.

5

29. By unilaterally placing Schimkewitsch on probation after only one unexcused absence, NYIT disparately applied its handbook provisions to create a pretext on which it could later rely in dismissing Plaintiff due to his disability, record of disability, or perceived disability.

30. Schimkewitsch was kept on academic probation from in or around November 2017 until in or around May 2018, which spanned two semesters, almost a full academic year.

31. Even if NYIT was permitted under the student handbook to place Schimkewitsch on academic probation for a single absence, the extreme length of his academic probation exemplifies the disparate treatment Schimkewitsch was subjected to due to his disability, record of disability, or NYIT's perception that he is disabled.

32. A student who is placed on probation may be immediately dismissed if he or she is deemed to have subsequently violated NYIT policies or failed to meet obligations.

33. The extreme duration of Schimkewitsch's probationary status, based on the trivial misconduct alleged evidences NYIT's discriminatory animus and effort to target Schimkewitsch for a pretextual discrimination dismissal due to his actual or perceived disability, or record of being disabled.

34. The extreme duration of Schimkewitsch's probationary status, based on the trivial misconduct alleged, exemplifies disparate treatment and targeted harassment due to his disability, record of being disabled, or perceived disability.

35. From approximately July 23, 2018 to on or about August 9, 2018, Schimkewitsch was working to complete his clinical rotation at Long Island Jewish Medical Center ("LIJ") in Lake Success, New York.

36. Following three consecutive days of working 12-hour shifts on July 6, July 7, and July 8, 2018, on July 9, 2018, Schimkewitsch was assigned to work a 27-hour shift. Pursuant to

6

NYIT's Clinical Orientation Manual, students working such shifts are permitted to get 4 hours of uninterrupted sleep during the course of an on-call extended shift.

37. Akiva Dym was the on-call resident at LIJ during the time of Schimkewitsch's clinical there. Due to the nature of the clinical, on-call residents were responsible for serving as a go-between for communication purposes between the PA students and PA supervisors.

38. On July 9, 2020, Schimkewitsch asked Dr. Dym, and was permitted to take a nap rather than take a lunch break.

39. Previously, the NYIT clerkship education manager had directed that students be permitted to have at least four hours of uninterrupted sleep on days on which they are on-call.

40. The Clinical Orientation Manual also sets forth that students have at least 4 hours of uninterrupted sleep on days on which they are on-call.

41. Schimkewitsch's request was in line with both his NYIT clerkship educational manager's directive and the Clinical Orientation Manual.

42. In the fourth hour, Schimkewitsch was awakened and told to see his preceptor who told him to go home and return the following Monday because he had taken the sleep-break.

43. Schimkewitsch was subsequently removed from the clinical rotation.

44. The fact that Schimkewitsch was sent home during his sleep break establishes his sleep break was the alleged offense which caused NYIT to remove Schimkewitsch from the clinical.

45. The Monday after he had been sent home from his clinical, Schimkewitsch was directed to NYIT for a meeting.

46. On August 13, 2018, Schimkewitsch attended the aforesaid meeting where spurious allegations were fabricated regarding the reason Schimkewitsch was sent home from his clinical rotation. The allegations falsely stated that Schimkewitsch engaged in conduct that risked patient

7

safety. At no point did Schimkewitsch do anything which risked patient harm. This allegation was a pretext to camouflage NYIT's discriminatory animus.

47. Again, if Schimkewitsch had endangered a patient, he would not have been permitted to continue at the clinical. Rather, he was sent home because he took a sleep break, not because he endangered a patient.

48. Again, NYIT policy states that students engaged in a clinical rotation should be permitted at least 4 hours of sleep in between shifts. The fact that Schimkewitsch was removed from the clinical rotation for sleeping, despite receiving permission from his supervisor, constitutes a deviation from NYIT policy and well-settled past practice that establishes NYIT's alleged basis for removing Schimkewitsch from the clinical rotation was a pretext to cover-up the fact that it discriminated against him due to his disability, record of disability or NYIT's perception of him as being disabled.

49. At the August 13, 2018 meeting, Schimkewitsch was given a description of the events that completely misrepresented what had actually occurred. Schimkewitsch was accused of intentionally adversely affecting the treatment of a patient. There were many individuals present in the intensive care unit at the time of the alleged conduct. However, the individuals that gave statements to NYIT were not witnesses. There were eye-witnesses present at the incident who sought to speak in support of Schimkewitsch who were not afforded the opportunity to do so. All of Schimkewitsch's statements with regard to what transpired were summarily disregarded, and never properly investigated.

50. Following the meeting, despite substantial exculpatory evidence, Schimkewitsch was nonetheless removed from the hospital and was not given credit for the General Surgery clerkship. As a result, on August 13, 2018, Schimkewitsch was informed he was being dismissed from his General Surgery clinical rotation.

51. On or about September 3, 2018, Schimkewitsch was placed on emergency suspension. At the time, Program Chairperson, Ahmed, directed that, in order for Schimkewitsch to return to the Program, he must first be cleared by a psychiatrist.

52. Ahmed's directive further establishes that NYIT perceived Schimkewitsch as suffering from a psychological disability.

53. In compliance with NYIT's directive, Schimkewitsch met with a school-affiliated psychiatrist who charged him $300.00 and diagnosed him with anxiety disorder.

54. The fact that Schimkewitsch was required to receive psychiatric clearance before he could return to school establishes that NYIT suspended Schimkewitsch because of his diagnosed disability and/or NYIT's perception that he was psychologically disabled. At no point was Schimkewitsch a danger to himself or others.

55. Once the NYIT administration's prior perception of Schimkewitsch's disability was officially diagnosed by the school-affiliated psychiatrist, NYIT agents became more overt in its actions to remove him from the program prior to graduation.

56. The psychiatrist who evaluated Schimkewitsch communicated repeatedly to the NYIT administration that Schimkewitsch suffered from anxiety disorder but was able to perform the essential functions required of PA students.

57. At all times, Schimkewitsch was qualified and capable of earning his degree.

58. Based on the school-affiliated psychiatrist's findings, Schimkewitsch returned to the PA program and performed exceedingly well in his next two clinical rotations.

59. The first of these clinical rotations was the Internal Medicine Clinical, which commenced on or about September 17, 2018.

60. Schimkewitsch successfully completed his Internal Medicine Clinical with Dr. Karen Lee located at 83-24 Cornish Avenue, Queens, New York 11373.

61. Schimkewitsch also successfully completed his Internal Medicine clinical rotation at Winthrop, which commenced on or about October 15, 2018. Significantly, Schimkewitsch's supervisors at Winthrop were so impressed with his work there that they offered him employment should he have completed the PA Program.

62. After completing his Internal Medicine clinical rotation, Schimkewitsch commenced his sixth clinical rotation, Pediatrics.

63. Schimkewitsch's Pediatrics Clinical Rotation took place at the practice of Demetrios Markouizos, located at 30-14 37th Street, Astoria, New York 11103.

64. Typically, at the mid-point of a clinical, the supervisor will issue to the student a mid-rotational evaluation. The purpose of the mid-rotational evaluation is to inform the student as to areas of improvement. Significantly, it is unrelated to a student's grade. A student can still earn a high grade after receiving a critical mid-rotation evaluation. As such, the mid-rotational evaluation is meant to serve the student as a learning aide. It is not meant to serve as a grade or indication that a student will successfully complete the clinical. Mid-rotational evaluations are sent to both the student and NYIT.

65. When it came time for the Pediatrics mid-rotational evaluation, Dr. Markouizos issued Schimkewitsch an evaluation that contained significant constructive criticisms and highlighted areas which required improvement.

66. Schimkewitsch approached Dr. Markouizos to discuss his evaluation. Dr. Markouizos informed Schimkewitsch that he meant the evaluation to be constructive and that he looked forward to seeing improvement from him.

67. Despite the fact that NYIT policy is clear as it relates to the fact that mid-rotational evaluations are not grades and do not determine whether a student successfully completed a

rotation, upon receiving the mid-rotational evaluation from Dr. Markouizos, NYIT summarily dismissed Schimkewitsch from the MS Physician Assistant Studies program on December 6, 2018.

68. NYIT's expulsion of Schimkewitsch constitutes another deviation from and/or violation of NYIT policies and procedures.

69. NYIT's expulsion of Schimkewitsch constitutes disparate treatment insofar as other similarly situated non-disabled PA Program students have not been expelled based on a mid-rotational evaluation.

70. NYIT's expulsion of Schimkewitsch was a continuation of its pattern and practice of violating its rules, policies, and procedures, subjecting Schimkewitsch to disparate treatment, and executing its agenda to expel Schimkewitsch based on a manufactured pretext due to his disability, record of being disabled, and/or its perception that he is disabled.

71. NYIT unlawfully expelled Schimkewitsch due to his disability, record of being disabled, and/or its perception of him being disabled.

72. At the time NYIT permanently expelled Schimkewitsch, he had earned a 3.5 Grade Point Average.

73. At the time of his expulsion, Schimkewitsch had substantially paid for and completed approximately 75% of the PA degree program.

74. But for his wrongful dismissal from his general surgery clinical rotation, Schimkewitsch would have only needed to complete one more semester to graduate.

75. As a result of Schimkewitsch's enrollment and subsequent unlawful expulsion from NYIT, he has incurred more than $92,400.00 in student debt, which continues to accrue significant interest.

76. The vast majority of rotation evaluations Schimkewitsch received were overwhelmingly excellent.

11

77. Due to the nature and requirements of a Physicians Assistant's Masters degree, the credits Schimkewitsch earned during his time attending the PA Program are non-transferrable. As a result, he is unable to resurrect his education at another PA Program and NYIT effectively prevented him from ever successfully becoming a PA.

78. At no point did NYIT engage in an interactive dialogue, or inquire with Schimkewitsch or its psychiatrist what, if any, accommodation it could provide Schimkewitsch to allow him to complete his education.

79. NYIT deviated from and violated many of its own policies on multiple occasions as part and parcel of its agenda to discriminate against Schimkewitsch.

80. As a full-time enrolled student, Schimkewitsch has paid tuition and fees to NYIT of approximately $1,300.00 per credit. In total, at the end of 3 years Schimkewitsch paid approximately $127,400.00.

## *CLAIMS FOR RELIEF*

### COUNT I

### DISCRIMINATION BASED ON DISABILITY, RECORD OF DISABILITY, PERCEIVED DISABILITY
Pursuant to §504 of the Rehabilitation Act of 1973, Titles I & III of the American With Disabilities Act, New York State Human Rights Law, and the New York City Human Rights Law

81. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "66," as if fully set forth herein.

82. Schimkewitsch has a mental impairment that substantially limits one or more major life activities.

83. Schimkewitsch's anxiety disorder substantially limited his ability to interact people in social and/or professional settings.

84. Due to his anxiety disorder, Schimkewitsch suffered from the following symptoms.

12

feeling restless, wound-up, or on-edge, being easily fatigued, irritability, difficulty controlling feelings of worry,. difficulty falling or staying asleep, restlessness, or unsatisfying sleep

85. Defendant's actions caused and/or exacerbated Schimkewitsch's disability and impairment.

86. Schimkewitsch was qualified to be a student and able to perform the essential functions of being a student, with or without reasonable accommodation.

87. Schimkewitsch was removed from his position as a student based on his disability, record of disability, or being regarded as having a disability.

88. As described above, Defendant NYIT has taken adverse actions against Schimkewitsch, which were motivated by Schimkewitsch's disability (Anxiety Disorder), record of disability, and/or NYIT's perception of Schimkewitsch as being disabled in violation of the Americans with Disabilities Act, the Rehabilitation Act of 1973, the New York State Executive Law § 296(4), and New York City Human Rights Law, Administrative Code § 8-107.

89. New York City Human Rights Law applies to Schimkewitsch's claims because accrued, in significant part, in New York City, NYIT, including its PA Program, has a significant academic presence in and around New York City, unlawful acts taken against Schimkewitsch based on occurrences which took place in and around New York City impacted New York City, and if NYIT is permitted to continue to discriminate against students based on disabilities, it will inevitably further and significantly impact New York City.

90. Schimkewitsch's claims arose, in part or whole, while he participated in the following NYIT clinical rotations located in New York City:

- Rotations 1 and 2 (8 weeks total) - Family Medicine - 23-35 Bell Boulevard, Queens, New York 11360.

- Rotation 4 - Internal Medicine - 83-24 Cornish Avenue, Queens, New York 11373.

- Rotation 6 - Pediatrics - 30-14 37th Street, Astoria, New York 11103

13

91. Accordingly, four of the six clinical rotations Schimkewitsch participated in while enrolled in the PA Program, were located in New York City.

92. Critically, NYIT's unlawful discriminatory campaign to dismiss Schimkewitsch based on pretext due to his disability, record of disability, and/or perceived disability culminated during the clinical rotation component of his rotation located in New York City.

93. Significantly, at the time NYIT dismissed Schimkewitsch from the PA Program he was only four-days away from completing the Pediatrics clinical rotation in Astoria, New York.

94. In dismissing Schimkewitsch from the PA Program, NYIT based its decision on a mid-rotational evaluation related to the Pediatrics clinical rotation in Astoria, New York.

95. Mid-rotational evaluations are not grades and may not serve as a basis for dismissal.

96. NYIT's reliance on the mid-rotational evaluation as a basis for Schimkewitsch's termination constituted a deviation and/or violation of its policies and procedures.

97. NYIT unlawfully dismissed Schimkewitsch four days prior to his scheduled end of rotation exam.

98. NYIT improperly and unlawfully denied Schimkewitsch an opportunity to take the end of rotation exam.

99. NYIT's reliance on a mid-rotational evaluation was a pretext to coverup its unlawful discriminatory animus.

100. NYIT unlawfully dismissed Schimkewitsch from the PA Program due to his actual or perceived disability.

101. NYIT's unlawful acts has a significant impact New York City.

102. NYIT maintains a significant physical and operational presence in New York City.

103. NYIT promotes its New York City campus both online and in other promotional materials.

14

104. NYIT's website states, "NYIT-New York City is located at and around the intersection of Broadway and 61st Street. Part of New York City's West Side and Lincoln Square neighborhood, the campus is surrounded by cultural and recreational venues, stores, restaurants, and major companies, where many of our students find internships and employment opportunities."

105. According to the NYIT website, NYIT's New York City campus includes, but is not limited to:

- Edward Guiliano Global Center (EGGC), located at 1855 Broadway comprises of 12 floors of classrooms, distance learning facilities, labs, architecture FabLab, administrative offices, and home to NYIT-NYC Library;
- Student Activities Building, located at 1849 Broadway comprises of the Metro Café, the bookstore, and student study space;
- NYIT Auditorium on Broadway, located at 1871 Broadway is a 262 seat, auditorium;
- 16 W. 61st St., comprises of 11 floors of classrooms, labs, administrative offices, HIVE fine arts facility, and the Enrollment Services Center and Admissions offices; and
- 26 W. 61st St. comprises of five floors of classrooms, our Voya trading floor, and the Campus Life and Career Services offices.

106. NYIT greatly benefits from its operational presence in New York City and accordingly, its unlawful discriminatory acts made against Schimkewitsch have a tremendous impact on New York City.

## FOR ALL COUNTS

107. Plaintiff repeats and realleged every allegation as set forth in paragraphs "1" through "103" as if fully set forth herein.

15

108. As a result of Defendant NYITs actions, including dismissing and expelling Schimkewitsch from its Physician Assistant Master's Degree program, it is now impossible for Schimkewitsch to enroll in another similar program with another school.

109. As such, by its discriminatory and/or otherwise improper and unlawful actions, NYIT has effectively prevented Schimkewitsch from pursuing his chosen profession.

110. The annual salary for Physician Assistants in the New York Metropolitan area is currently approximately $110,000.

111. Schimkewitsch planned to work as a PA for at least the next forty (40) years.

112. By its discriminatory and/or otherwise improper and unlawful actions, Schimkewitsch has been effectively prevented from pursuing his chosen profession and earning the reasonable and customary salary associated with degreed graduates from NYIT's or any other PA graduate school program.

113. Based on NYIT's discriminatory and/or otherwise improper and unlawful actions, Schimkewitsch has incurred and will continue to incur pecuniary losses for current and future earnings in the sum of $5,000,000.

## JURY DEMAND

114. Plaintiff demands a trial by jury of all issues in the action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Elijah Schimkewitsch respectfully demands judgment against the Defendant as follows:

a. Declaring that the practices complained of in this complaint are unlawful and in violation of applicable Constitutional, federal, state, local, and/or common law, as described above with regard to Plaintiff Elijah Schimkewitsch and/or other students similarly situated;

b. Awarding damages, together with all other past, current, and future pecuniary losses, and prospective damages in the same amount and to the same extent Plaintiff would have received but for Defendant's unlawful conduct;

c. Awarding compensatory damages in the sum of $5,000,000.00 for each count of the complaint for Plaintiff's emotional pain and distress, mental anguish, humiliation, suffering, loss of enjoyment of life, inconvenience, physical harm and injuries, future pecuniary losses, and other non-pecuniary losses;

e. Awarding punitive damages in the sum of $5,000,000.00 for each count of the complaint;

f. Permanently enjoining the Defendant and its agents, officers, and/or employees from engaging in any of the practices found by this Court to be in violation of the laws, statutes, or Constitutional provisions cited herein;

g. Enjoining the Defendant and its agents, officers, and/or employees from otherwise harassing, discriminating, and/or retaliating against the Plaintiff;

h. Awarding reasonable attorneys' fees as permitted by law;

i. Awarding expert fees, if any, as well as the costs and expenses of the prosecution of this action;

j. Awarding pre-judgment and post-judgment interest at the statutory rate until time of payment;

k. Directing that the Court retain jurisdiction over this action to ensure full compliance with the Court's Orders and requiring Defendant to file such reports as the Court deems necessary to evaluate such compliance; and

l. Together with such other and further relief as the Court deems just and equitable.

Dated: Melville, New York
       July 15, 2020

                                      Respectfully submitted,

                                      GILBERT LAW GROUP

By: _____
                                      JASON ANDREW GILBERT

                                      Attorneys for Plaintiff Elijah Schimkewitsch
                                      425 Broadhollow Road, Suite 405
                                      Melville, New York 11747-4701
                                      (631) 630-0100
                                      Email: JAGILBERT@gilbertlegal.net
                                                  HEGILBERT@gilbertlegal.net

## VERIFICATION

STATE OF NEW YORK  }
                   } ss.:
COUNTY OF SUFFOLK  }

I, ELIJAH SCHIMKEWITSCH, being duly sworn, depose and say that deponent is the Plaintiff in the within action; I have read the foregoing complaint, and know the contents thereof; that the same are true to my knowledge, except as to the matters therein stated to alleged upon information and belief, and to those matters, I believe them to be true.

_____
ELIJAH SCHIMKEWITSCH

Sworn to before me on the
15th day of July 2020

JASON A. GILBERT
NOTARY PUBLIC-STATE OF NEW YORK
No. 02GI6316433
Qualified in Suffolk County
My Commission Expires December 15, 2022

_____
Notary Public

19