UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ELIJAH SCHIMKEWITSCH,

                Plaintiff,              19-cv-5199 (GRB)(LGD)

  -against-

NEW YORK INSTITUTE OF TECHNOLOGY,    **DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1**

                Defendant.
-------------------------------------------------------------x

Pursuant to Rule 56.1 of the Local Rules of this Court, Defendant New York Institute of Technology ("NYIT") submits the following response to Plaintiff Elijah Schimkewitsch's ("Plaintiff") Statement Pursuant to Local Civil Rule 56.1:

1. On May 10, 2017, in email communications regarding plaintiff's grade appeal, Professor Wolf, who was a member of the ASC, stated that plaintiff "has some issues." Ex. __, NYIT 1655. By email dated May 11, 2017, Professor Wolf pointed out to her colleagues, including Chair of Physician Assistant Studies Program, Zehra Ahmed ("Ahmed"), that Schimkewitsch admitted that receiving a B+ would destroy his self-esteem and that he requested confidentiality with regard to his grade appeal. *Id*.

> **Deny, except undisputed that in an email, dated May 10, 2017, from Corri Wolf ("Wolf") to Michele Damiani ("Damiani"), Wolf wrote "As you can tell he has some issues." NYIT refers the Court to Wolf's entire May 10, 2017 email for the context of this statement. NYIT1655. Undisputed that Wolf was present during some, but not all, ASC meetings concerning Plaintiff. NYIT1900. Undisputed that Plaintiff wrote to Damiani in an email dated, May 8, 2017: "What I meant by grade cut off is that I am actually one correct question from an A, and currently sitting at a B+ (which for a 5 credit class destroys my self-esteem)." NYIT1658. Undisputed that in an email, dated May 11, 2017, Wolf wrote to Zehra Ahmed ("Ahmed"), Chair of the Physician Assistant Studies Program (the "Program"), Kristine Prazak and Sara Wintor and summarized Plaintiff's May 8, 2017 communications to Damiani. NYIT**

1

further refers the Court to the complete email for a recitation of its contents. NYIT1654.

2. By email dated May 10, 2017, Ahmed agreed with Cori Wolf that Schimkewitsch "has some issues." *Id*.

**Deny the facts alleged in paragraph 2. NYIT refers the Court to Ahmed's May 10, 2017 email to Damiani for a complete recitation of its contents. NYIT1655.**

3. During the May 24, 2017 ASC meeting, ASC member David Jackson demonstrated he perceived Schimkewitsch having a disability that substantially limited his ability to function when he stated plaintiff needs "an additional source to help him with skills and management." Ex. __, NYIT 1747. He further communicated plaintiff should get "coaching and counseling with relaxation techniques." *Id*.

**Deny paragraph 3 as it consists of legal argument and conclusions. Undisputed that the meeting minutes for the May 24, 2017 ASC meeting concerning Plaintiff provide:**

> **[Jackson] explains that no one is ignoring Elijah, faculty is trying to help him in calling this meeting. He asked Elijah to recognize that the faculty is not against him, Dr. Ahmed is trying to help, and states it is up to ES to figure out a plan. [Jackson] gives examples on how to manage such as coaching and counseling with relaxation techniques. [Jackson] tells ES he needs an additional source to help him with skills and management.**

**NYIT1747.**

4. In an email dated August 12, 2018, Ahmed again demonstrated that she perceives plaintiff as being disabled when she requested security be present at a meeting with Schimkewitsch because she feels he "tightly controlling his anger." In the email, she admitted that her request was not based on "more than a 'gut' feeling or a 'vibe' and that's the best way to explain it. He is socially awkward and does not seem to be able to read social cues very well. I

do not want to blow this out of proportion at all but in light of how many people feel and have 'read' him I prefer to be safer than sorry." Ex. __, NYIT 1810.

> **Deny paragraph 4 as it consists of legal argument and conclusions and to the extent that the citations to the record do not support Plaintiff's characterization of the alleged facts. Undisputed that Ahmed's August 12, 2018 email to Anthony Repalone and others contains the cited language; however, NYIT refers the Court to the Ahmed's email for a complete recitation of its contents. NYIT1809-1811.**

5. Although plaintiff had not engaged in any aggressive, threatening, abusive, or violent behavior, on September 13, 2018, defendant placed Schimkewitsch on Emergency Suspension and requested a Behavioral Intervention Team ("BIT") assessment because defendant perceived plaintiff suffered from one or more mental impairments/disabilities that substantially limit his ability to control his emotions and/or otherwise function. Ex. __, NYIT 200, 1810.

> **Deny paragraph 5 as it consists of legal argument and conclusions and to the extent that the citations to the record do not support Plaintiff's characterization of the alleged facts. NYIT200, 1810. NYIT refers the Court to paragraphs 100 – 108 of NYIT's 56.1 Statement for NYIT's explanation for placing Plaintiff on emergency suspension.**

6. Prior to his enrollment in the Program, plaintiff established himself as an outstanding student with no history of professional misconduct or difficulty getting along with others. Ex. __, Ahmed Dep. 42:2-43:25.

> **Deny paragraph 6 as the citations to the record do not support Plaintiff's characterization of the alleged facts. Undisputed that Ahmed testified that from a review of Plaintiff's application to the Program, "[Plaintiff] was a very good student, academically had done extremely well." Ahmed Tr. 42:14-15. Ahmed did not testify concerning Plaintiff's history of professional misconduct or ability to get along with others. Ahmed Tr. 42:2-43:25.**

7. Any allegations that plaintiff was rude, argumentative, and or unprofessional, which allegedly formed the basis for the ASC meeting that took place on May 24, 2017, were without merit. Pl. Aff. ¶¶ __-__.

3

**Deny paragraph 7 as it consists entirely of legal argument. Plaintiff does not provide citations to the record to support the allegations in paragraph 7.**

8. For example, one such alleged basis was plaintiff's grade appeal of an examination in the Clinical Medicine II course, as well as the calculation of his Endocrine quiz grade in the same course. Ex. __, NYIT 243-256, 306-325.

**Deny paragraph 8 as the citations to the record do not support Plaintiff's characterization of the alleged facts. NYIT refers the Court to paragraphs 45-59 of NYIT's 56.1 Statement for NYIT's explanation for holding the May 24, 2017 ASC meeting.**

9. To the extent plaintiff disagreed with his grade(s), he is entitled to follow the grade appeals procedure. *Id*., Ex. __, NYIT 2064.

**Undisputed.**

10. The student handbook provides a grade appeals process. At all relevant times, plaintiff acted in compliance with the appeals process to which he is entitled to pursue. Ex. __, NYIT 243-256, 306-325.

**Undisputed that the Program's Student Handbook and NYIT's Student Handbook contain a grade appeals process. Further undisputed that Plaintiff appealed his grades in his Clinical Medicine II course. See NYIT's 56.1 Statement, ¶¶ 33-40.**

11. In challenging his grade, plaintiff was neither rude nor argumentative. *Id*.

**Deny. See NYIT's 56.1 Statement, ¶¶ 25-32.**

12. Plaintiff contended that the multiple-choice exam questions he was challenging offered more than one correct answer. Ex. __, NYIT 301-305, 1705-1706. In his appeals communication, his inquiries were at all times courteous and thoughtful. Ex. __, NYIT 306-325. In making such challenges, Schimkewitsch cited authority provided by his professor. *Id*.

**Undisputed that Plaintiff alleged that the challenged examination questions contained more than one correct answer, except deny the remainder of the facts alleged in paragraph 12. See NYIT's 56.1 Statement, ¶¶ 25-40.**

13. As a direct result of Schimkewitsch's grade appeal, Professor Wolf admitted to an erroneous miscalculation of his grade. Ex. __, NYIT 249.

**Deny Plaintiff's characterization of the facts alleged in paragraph 13, except it is undisputed that Wolf informed Plaintiff via email on May 25, 2017 that she corrected Plaintiff's calculated grade to 89.4. NYIT249-250.**

14. As punishment, defendant required plaintiff to sign a Behavioral Contract. Ex. __, NYIT 1-3.

**Deny Plaintiff's characterization of the facts alleged in paragraph 14, except undisputed that NYIT required that Plaintiff sign a behavioral contract in August 2017. *See* NYIT's 56.1 Statement, ¶¶ 41-59.**

15. Each year, defendant repeatedly amended, modified, added to, and/or altered the policies set forth NYIT Physician Assistant Studies Program ("the Program") Student Handbook without providing notice to its students. Ex. __, Ahmed Dep. 87:2-12; Pl. Aff. ¶ __.

**Undisputed that the Program's Student Handbook may have been modified each year, except deny that the citation to the record indicates that students were not notified of any changes. Ahmed Tr. 87. *See* NYIT1813-1814, 2020.**

16. Although plaintiff acknowledged his understanding of the policies set forth in the Student Handbook for the 2016-17 school year on or about September 6, 2016, he did not do so for any subsequent year. Pl. Aff. ¶ __.

**Undisputed, except deny the remainder of the allegations in paragraph 16 as the citation to the record indicates that Plaintiff did not acknowledge his understanding of the Program's Student Handbook for subsequent years in the Program.**

17. The alleged basis for the November 16, 2017, ASC meeting was plaintiff's absence from David Jackson's PHAS 650 Research I class On November 9, 2017 and that he subsequently took an exam later that day. However, that was not a normally scheduled class. It was announced and scheduled with a single day's notice. Ex. __, Pl. Dep. 102:19-103:2. Plaintiff forgot to set his alarm. *Id.*

**Undisputed that the ASC met on November 16, 2017 concerning Plaintiff's unexcused absence on November 9, 2017.** *See* **NYIT 56.1 Statement ¶¶ 60-66. Undisputed that Plaintiff testified that the class was scheduled the day prior, except deny that the citations to the record support the remaining allegations in paragraph 17.**

18. Plaintiff was not familiar with and/or did not fully understand certain policies set forth in the student handbook, such as the policy which allegedly formed the basis for the Academic Standing Committee ("ASC") meeting that took place on November 9, 2017. Ex. __, Pl. Dep. 101:9-14.

**Deny the facts alleged in paragraph 18 as Plaintiff acknowledged in September 2016 that he "understood" the contents of the Program's Student Handbook. NYIT2109.**

19. In anticipation of the November 16, 2017, ASC meeting, the ASC, led by Ahmed, sought to identify a policy on which it could rely to maximize the penalty levied against Schimkewitsch. Ex. __, NYIT 2104. In an email dated November 14, 2017, Ahmed advocated that they "go straight to an ASC meeting about this," and "I believe we can actually put him on probation according to the wording." *Id*.

**Deny Plaintiff's characterization of the citations to the record in paragraph 19. Undisputed that Amhed's November 14, 2017 email contains the cited language.**

20. In addition to not being familiar with the relevant policy, had plaintiff chosen to not take the exam that day, he would have likely failed the class. Ex. __, Pl. Dep. 236:5-237:2. Schimkewitsch had prepared for that exam for weeks. *Id*. He did not intend to, nor did he have any unfair advantage by virtue of his absence from the PHAS 650 class. Id. Plaintiff apologized for the events, was professional and accountable. *Id*.; Aff., Ex. __, Pl. Dep. 101:9-14.

**Deny Plaintiff's characterization of the citations to the record in paragraph 20.**

21. The alleged absence that resulted in disciplinary action was plaintiff's first and only absence of that school year. Ex. __, Ahmed Dep. 76:9-13.

6

**Deny that the citation to the record supports the factual allegations in paragraph 21; however, it is undisputed that when questioned whether this was Plaintiff's first and only absence, Ahmed responded "I think quite possibly." Ahmed Tr. 76:9-13.**

22. Typically, where a student only had one absence, it would serve as a mitigating factor as it relates to penalty. *Id*. at 76:14-25.

**Undisputed.**

23. Defendant purportedly placed Schimkewitsch on probation based mostly on the allegation that he appealed his grade, had one unexcused absence, and took an exam the same day as his unexcused absence. Exs. __, Ahmed Dep. 56:6-17; NYIT 1-2, 4-5

**Deny that the citations to the record support the factual allegations in paragraph 23 and refer the Court to the December 20, 2017 letter from Ahmed for NYIT's reasons for placing Plaintiff on probation. *See* Pl. Dep. Ex. H.**

**24.** In each of ASC's letters recommending disciplinary action, defendant failed to include record of the defenses Schimkewitsch raised at the corresponding ASC meeting even though it should have. Ex. __, Ahmed Dep. 73:13-74:5.

**Deny that the citations to the record support the factual allegations in paragraph 24. *See* Pl. Dep. Exs. E, H, R.**

25. It was alleged that on or about August 9, 2018, plaintiff engaged in various acts of professional misconduct. Ex. __, NYIT 13. These allegations led to Schimkewitsch being called to an ASC meeting scheduled for August 30, 2018. *Id*. It was not until the August 30, 2018, ASC meeting that the ASC had the opportunity to "hear [Schimkewitsch's] perspective on the events." *Id*. However, on or about August 24, 2018, Ahmed engaged in email communication with Suzana Rebecca, Associate Director of PA Admissions, to investigate the financial repercussions that would result when defendant dismiss Schimkewitsch from the Program. Ex. __, NYIT 1868-69.

**Deny that the citations to the record support the factual allegations in paragraph 25. See NYIT 56.1 ¶¶ 81-99. Undisputed that on August 9, 2018 Long Island Jewish Medical Center ("LIJ") informed NYIT of Plaintiff's unprofessional conduct and that an ASC meeting was held on August 30, 2018 concerning Plaintiff's dismissal from his clerkship at LIJ. Undisputed that Plaintiff met with Ahmed and Yennie Armand ("Armand") concerning his dismissal from LIJ on August 13 and 16, 2018 at which he was able to share his version of the events at LIJ. See Pl. Dep. Exs. M-N. Undisputed that Suzana Rebecca ("Rebecca") provided Ahmed with information concerning NYIT's withdrawal/dismissal tuition refund policy on August 23, 2018 as it related to Plaintiff as the ASC could recommend dismissal from the Program based on his dismissal from LIJ. Pl. Dep. Ex. M. It is further undisputed that Ahmed responded to Rebecca as follows: "It is a bit premature to tell say anything about dismissal because there are several other steps we have to go through." NYIT1868-1869.**

26. In her August 23, 2018, email to Suzana, Ahmed states, "It is a bit premature to tell [sic] say anything about dismissal because there are several other steps we have to go through." *Id.* at NYIT 1868.

**Undisputed.**

27. Contrary to the ASC's findings, plaintiff's student peers were not scheduled to present a team project that day. His absence did not prevent them from ultimately being able to present. They were able to present their project another day. Ex. __, Pl. Dep. 99:9-21; Pl. Aff. ¶¶ __-__; Ex. __, NYIT 1851-53.

**Deny that the citations to the record support the factual allegations in paragraph 27. See Pl. Dep. Ex. H.**

28. At all relevant times, plaintiff did not engage in any acts or omissions which "risked patient safety." Pl. Aff. ¶ __; Ex. __, NYIT 1899.

**Deny that the citations to the record support the factual allegations in paragraph 28. See NYIT 56.1 ¶¶ 81-99, 110-119. Undisputed that Pamela Karp ("Karp"), a faculty member in the Department of Occupational Therapy and one of the faculty members present during the August 30, 2018 ASC meeting, did not believe that Plaintiff's conduct was a "patient safety concern." NYIT1898. Other faculty members present at the ASC meeting disagreed with Karp's opinion. NYIT1931-1935.**

8

29. The ASC's findings relating to its August 30, 2018 meeting had multiple inaccuracies. Plaintiff was disciplined for sleeping between the hours of 12:00 and 3:30 p.m. However, pursuant to the relevant Clinical Orientation Manual, Schimkewitsch was entitled to four hours of uninterrupted sleep. Ex. __, NYIT 1812.

> **Deny that the citations to the record support the factual allegations in paragraph 29. *See* NYIT's 56.1 Statement ¶¶ 86-97, 110-119. As set forth in the ASC's September 8, 2018 letter, one of the reasons for LIJ's dismissal of Plaintiff from his clerkship was that he took a break, but "did not ask for permission nor did [Plaintiff] inform any of the PA's that were working that day of where [Plaintiff] would be." Pl. Dep. Ex. R.**

30. Additionally, plaintiff was disciplined because he allegedly failed to abide by instructions when holding a bronchoscopy tube thereby allegedly threatening patient safety. Ex. __, NYIT 13. However, at all relevant times, Schimkewitsch adhered to any instructions he received and maintained the position of the bronchial tube as instructed. Gilbert Aff. Ex. __, Pl. Dep. 133:4-25. At the time of the alleged incident, in the event that Schimkewitsch was holding the tube incorrectly, no faculty or staff advised, warned, reprimanded, or instructed him he was doing so. *Id*.

> **Deny that the citations to the record support the factual allegations in paragraph 30. *See* NYIT's 56.1 Statement ¶¶ 86-97, 110-119. Undisputed that one of the reasons for LIJ's dismissal of Plaintiff from the clerkship was their concern that Plaintiff's conduct was a "direct threat to patient safety." NYIT1803-1804.**

31. Neither of the allegations set forth at the August 30, 2018, ASC meeting threatened patient safety. Following the meeting, Assistant Professor and member of the ASC, Pamela Karp wrote to Ahmed, "Based on the two incidents we discussed at yesterday's ARC…I personally did not feel that either of these incidents proved to be a patient safety concern. I would like to think that if the ET tube issue was of concern to the supervising doctor during the

procedure, the doctor would have made that abundantly clear to both the student, preceptors, and to your program's coordinator." Ex. __, NYIT 1899.

**Deny. *See* response to paragraph 28.**

32. Schimkewitsch had virtually no interaction with Matthew Shebes, his preceptor for the Surgical Rotation. Pl. Dep. 151:2-6. Although Shebes was responsible for reporting the alleged issues which led to plaintiff's dismissal from the Surgical clerkship, he did not directly witness any of the alleged incidents. Nor did defendant interview any individuals who witnessed plaintiff holding the bronchoscopy tube before administering discipline against Schimkewitsch. Ex. __, 104:13-16.

**Deny that the citations to the record support the factual allegations in paragraph 32. *See* NYIT's 56.1 Statement ¶¶ 86-97, 110-119.**

33. During his clinical rotations, plaintiff established that he properly, professionally, and safely treated patients. During the Internal Medicine clerkship and Family Practice clerkship, both of which plaintiff successfully completed, Schimkewitsch successfully saw 404 patients. Ex. __, NYIT 725. Of those 404 patients, many presented complex and/or moderately complex problems. *Id*. at NYIT 733.

**Deny that the citations to the record support Plaintiff's opinion that he properly, professionally and safely treated patients. *See* NYIT's 56.1 Statement ¶¶ 86-97, 110-119, 136-151. Undisputed that Plaintiff completed Internal Medicine and Family Practice clerkships during which he saw 404 patients, many of whom required decisionmaking of "moderate" and "high" complexity. NYIT 725, 733.**

34. At the time defendant administered the various adverse disciplinary measures against plaintiff, Ahmed recognized the possibility that the nature of the disciplinary measures against plaintiff may have caused or contributed to his mental condition. Ex. __, Ahmed Dep. 121:9-16. Yet defendant made no alteration or modification to plaintiff's environment nor the

method by which defendants were progressively disciplining Schimkewitsch. Ex. __, NYIT 13-15; Ex. __, NYIT 591; Ex. __, NYIT 2005.

> **Deny that the citations to the record support the factual allegations in paragraph 34. Further deny the allegations as they consist of legal argument and conclusions.**

35. Plaintiff's dismissal from the Pediatric clinical rotation, which resulted in his dismissal from the Program, was due to defendant's perception of Schimkewitsch as being disabled, rather than any alleged misconduct. A mid-rotation evaluation does not count towards a student's grade. Pl. Aff. ¶ __. Defendant unilaterally and prematurely dismissed Schimkewitsch from the Pediatric clerkship. Pl. Aff. ¶ __, Ex. __, NYIT 593-595.

> **Deny that the citations to the record support the factual allegations in paragraph 35. Further deny the allegations as they consist of legal argument and conclusions.**

36. The preceptor of the Pediatric clerkship, Dr. Markiouzos, affirmatively told Ahmed he did not want Schimkewitsch to be dismissed. Ex. __, NYIT 2008. He indicated to Schimkewitsch that his mid-rotation evaluation was meant to be constructive and motivating and he hoped to be a positive influence on his career as a Physician's Assistant. Id. at NYIT 2005, NYIT 593.

> **Deny that the citations to the record support the factual allegations in paragraph 36. Undisputed that Plaintiff informed NYIT that Dr. Markiouzos informed Plaintiff that he "intended on giving me this evaluation as an alert to improve and become more well-rounded." NYIT2005.**

37. When told by defendant that Schimkewitsch was being dismissed Dr. Markiouzos responded, "I hope this was not because of me." Ahmed responded, "absolutely not," that it was "our decision."

> **Plaintiff does not cite to any relevant evidence in the record to support the factual allegations in paragraph 37.**

11

38. Despite defendant's perception of plaintiff having one or more limiting mental impairments, no one communicated to Dr. Markiouzos that Schimkewitsch was disabled in an effort to help plaintiff succeed at the Pediatric clerkship. Ex. __, Ahmed Dep. 148:13-23.

**Deny paragraph 38 as it consists of legal arguments and conclusions and does not contain factual allegations.**

39. Nor did any agent of defendant engage with plaintiff to determine whether there might be an accommodation that defendant could provide, which would allow plaintiff to better manage the stressors presented by the high-intensity academic and clinical environment. Pl. Aff. ¶__.

**Deny paragraph 39 as it consists of legal arguments and conclusions and does not contain factual allegations.**

40. On November 30, 2018, defendant received plaintiff's mid-rotation evaluation from Dr. Markiouzos. Ex. __, NYIT 594-95. On December 1, 2018, Ahmed initiated a telephone conference with Dr. Markiouzos during which she indicated that Schimkewitsch was being dismissed from the Pediatric clerkship because of his own "behavior." Ex. __, NYIT 589.

**Undisputed, except NYIT refers the Court to Ahmed's December 1, 2018 email for a complete recitation of its contents. NYIT589.**

41. In his December 1, 2018, conversation with Ahmed, Markiouzos then repeatedly asked Ahmed for information detailing the "previous issues" Ahmed had referenced relating to Schimkewitsch. *Id*. In a December 1, 2018 email, Ahmed claims she responded only by saying they "had some concerns" but she "could not say more." *Id*.

**Deny that the citations to the record support Plaintiff's characterization of the factual allegations in paragraph 41. Undisputed that Ahmed's December 1, 2018 email contains the cited language, but NYIT refers the Court to Ahmed's December 1, 2018 email for a complete recitation of its contents. NYIT589.**

42. In the email to Yennie Armand, Assistant Professor and Clinical Coordinator, Ahmed stated, "We absolutely cannot speak about any details of previous situations as this is not going to end without a fight as far as Elijah is concerned." *Id*.

**Undisputed that Ahmed's December 1, 2018 email to Armand included the cited language, however refer the Court to Ahmed's December 1, 2018 email for a complete recitation of its contents. NYIT589.**

43. Although in her December 1, 2018 email to Armand Ahmed claims she did not go into any details with regard to the "previous issues" she referenced to Dr. Markiouzos, she was cognizant of the likelihood of litigation. *Id*. Additionally, it is apparent that prior to her December 1, 2018 telephone conference with Dr. Markiouzos, Dr. Markiouzos did not want Schimkewitsch to be dismissed from his Pediatric clerkship and had a positive rapport with plaintiff. Ex. __, NYIT 589, 2005, 2008.

**Deny that the citations to the record support Plaintiff's characterization of the factual allegations in paragraph 43.**

44. By prematurely and unilaterally dismissing Schimkewitsch from the Pediatric clerkship, defendant deliberately denied plaintiff the ability to improve on the areas denoted in the mid-rotation evaluation such that he could have successfully completed his clinical rotation. Pl. Aff. ¶ __.

**Deny paragraph 44 as it consists of legal argument and conclusions and does not contain factual allegations.**

45. By failing to engage with plaintiff to determine if there were any accommodations that would have allowed him to function better in the presented environment, failing to notify preceptors of defendant's perception that plaintiff was disabled, and denying plaintiff the opportunity to improve his performance in the second half of the Pediatric clerkship, defendant

13

acted deliberately to force plaintiff to quit, or set Schimkewitsch up to fail and purge the Program of Schimkewitsch as a student. Pl. Aff. ¶ __.

**Deny paragraph 45 as it consists of legal argument and conclusions and does not contain factual allegations.**

47. Schimkewitsch as an excellent student, with exemplary grades, was otherwise qualified to perform the essential functions of his position as a student in the Program with or without reasonable accommodation. Ex. __, Ahmed Dep. 42:2-43:25; Ex. __, NYIT 725, 733; Pl. Aff, ¶¶ __.

**Deny paragraph 46 as it consists of legal argument and conclusions.**

47. Plaintiff Elijah Schimkewitsch ("Schimkewitsch" or "plaintiff") is diagnosed as suffering from Anxiety Disorder and has a documented history of history of "cognitive complaints" and a "history of evaluation by psychiatric services required." Ex. __, NYIT 2138.

**Undisputed that Plaintiff's medical records received from Northwell Health, dated April 20, 2021, indicate that one of Plaintiff's "active problems" was anxiety disorder and that under Plaintiff's list of "past medical history," the records list "[h]istory of cognitive complaints" and "history of evaluation by psychiatric services required." NYIT2138.**

Dated: New York, New York
April 26, 2023

                               Respectfully submitted,
                               Clifton Budd & DeMaria, LLP
                               *Attorneys for Defendant*

                 By: *Stefanie Toren*
                               Douglas Catalano
                               Stefanie Toren
                               The Empire State Building
                               350 Fifth Avenue, 61st Floor
                               New York, NY 10118
                               (212) 687-7410 (tel)
                               dpcatalano@cbdm.com
                               storen@cbdm.com